663 So.2d 525 (1995)
STATE of Louisiana
v.
Venver YOUNG.
No. 94-KA-1636.
Court of Appeal of Louisiana, Fourth Circuit.
October 26, 1995.
*526 Harry F. Connick, District Attorney, Mark D. Pethke, Assistant District Attorney, Karen Godail Arena, Assistant District Attorney, New Orleans, for Plaintiff-Appellee.
Yvonne L. Hughes, Gretna, for Defendant-Appellant.
Before SCHOTT, C.J., and KLEES and PLOTKIN, JJ.
SCHOTT, Chief Judge.
Defendant was convicted of one count of armed robbery in violation of LSA-R.S. 14:64 and one count of simple robbery in violation of R.S. 14:64.1. He was sentenced under the Habitual Offender Law, R.S. 15:529.1, as a fourth offender as to count one to thirty years at hard labor without benefit of parole to run concurrently with seven years imposed for count two. The state has appealed because sentence of thirty years is well below the minimum sentence of ninety-nine and one-half years prescribed by the Habitual Offender Law.
On the afternoon of March 22, 1993, Uzziah Wade was working at an aluminum recycling company in New Orleans. His job was to weigh scrap aluminum brought in by customers and pay them by check. Defendant walked into the trailer where Wade was working, pulled out a gun, and asked Wade for cash. When Wade explained that he had no cash defendant had him write two checks to cash, one for $100 and the other for $90. After taking the checks defendant ordered Wade to go to the back of the trailer and to stay there. After a few minutes defendant was gone and Wade called the police.
On April 1 defendant returned to the trailer where Wade was working and said to Wade, "You know what this is?" and Wade replied, "Yes." This time defendant kept his hand in the pocket where he had the gun on the previous occasion before showing it to Wade. This time defendant made Wade write a check to cash for $300.
After the first robbery defendant cashed the two checks at a liquor store. These checks were returned to the store as stolen. After the second robbery defendant went back to the same clerk in the same store to cash the third check. Having learned that the first checks were stolen the clerk and her boss called the police who came and arrested the defendant.
Defendant was initially sentenced to twenty years for the first offense of armed robbery and seven years for the second offense of simple robbery. The state filed Habitual Offender proceedings and established that defendant was a fourth offender by virtue of a 1981 plea of guilty to burglary of an inhabited dwelling, a 1982 plea of guilty to armed robbery, and a 1989 plea of guilty to possession of cocaine. The trial court found that defendant was a fourth offender with the result that the statutory minimum for the count of armed robbery was ninety-nine and one-half years. R.S. 15:529.1. However, the trial court sentenced him on this count to thirty years. In doing so the trial judge made the following statement:
I'm going to depart from the mandatory minimum sentence, which would be 99 years to life. However, the Court is of the opinion thatAnd the reason for the departure are those indicated that the Court should observe in Dorthey that any sentence beyond this would be constitutionally excessive. However, the Court is of the *527 opinion that the defendant should not receive the minimum sentence of 20 years in this matter. The defendant's 33 years old. He has violent crime in his past for armed robbery. And I do consider breaking into someone's home a violent crime as well, a 62.2. Which now the legislature has seen fit to elevate and make part of this statute, although it wasn't in at the time when he was convicted.
Also, we do have the facts of this case which are somewhat bizarre. But I agree with the jury's finding in that the defendant committed an armed robbery with a weapon of the victim in this case. I've given reasons previously and they apply here. The good part about it is that the defendant didn't hurt the victim. He certainly scared him considerably. But thank goodness the victim wasn't hurt. And I am taking that into consideration. By the same token, the defendant does have these very serious prior felonies, armed robbery, burglary of an inhabited dwelling, and possession of cocaine. And accordingly, it is the sentence of this Court that the defendant be committed to the Louisiana State Department of Corrections at hard labor for a tern of 30 years, without benefit of parole, with credit for time served.
In State v. Dorthey, 623 So.2d 1276 (La. 1993) the court reversed a judgment of the trial court which had declared the Habitual Offender Statute unconstitutional because it violated the separation of powers clause in the Louisiana constitution. The court recognized that the determination and definition of acts which are punishable as crimes is purely a legislature function as is the determination of the length of the sentence to be imposed for crimes classified as felonies. Moreover, trial courts must apply these punishments unless they are found to be unconstitutional.
However, in Dorthey the court recognized that the judiciary has the distinct responsibility of reviewing sentences imposed in criminal cases for constitutional excessiveness. This is the case when the punishment makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering grossly out of proportion to the severity of the crime.
The court remanded Dorthey's case to the trial court to determine whether the minimum sentence of twenty years prescribed by the Habitual Offender Law for a fourth offender and imposed on this 27 year old crack cocaine addict was constitutionally excessive as applied to that particular defendant.
In Dorthey the court did not provide any standards or guidelines for the trial court to follow in making its determination as to the constitutionality of the sentence. It simply repeated the general principles controlling the determination: "no measurable contribution to acceptable goals of punishment" and "the purposeful imposition of pain and suffering" and "grossly out of proportion to the severity of the crime". However, the court recognized that excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of the Supreme Court or the Court of Appeal.
One of the basic principles universally applied by courts in testing constitutionality is the presumption of constitutionality. In the application of this principle a trial court considering whether the minimum sentence prescribed by the legislature for the particular crime committed by a defendant would be unconstitutional if applied to a particular defendant may do so only if there is substantial evidence to rebut the presumption of constitutionality. The trial court may not depart from the legislaturely mandated minimum simply because of some subjective impression or feeling about the defendant.
In the present case there was no evidence to rebut the presumption of constitutionality. Furthermore, the reasons given by the trial judge for believing the minimum sentence would be unconstitutional are purely subjective. He simply stated that he was "going to depart" from the minimum prescribed by the Habitual Offender Law without any evidence in the record to justify this departure and without reciting any facts whatsoever to support his opinion that the minimum would be constitutionally excessive. Having made this decision to disregard the Habitual Offender Law he began to consider *528 whether or not to reimpose his original sentence of twenty years. He mentioned defendant's age of 33 years; that he had "violent crime in his past for armed robbery"; and that he had a previous conviction of simple burglary of an inhabited dwelling which the judge recognized as a violent crime but "which the legislature has seen to elevate" from the degree of seriousness it was when he was convicted of that crime. Turning to the facts of the case the judge characterized them as "bizarre" and while acknowledging that this was an armed robbery with a weapon "the defendant didn't hurt the victim" which the judge characterized as "the good part about it." The judge concluded by recognizing defendant's record of serious felonies as the reason for the imposition of a thirty year sentence.
Defendant committed a classic armed robbery. He held a gun on the victim and forced him to write out checks to cash while his life was being threatened. The legislature has concluded that this is such a serious offense that even for a first offender the minimum is five years, but the maximum may be ninety-nine years. Here we have a defendant who has been convicted of one armed robbery already and was apparently given a great deal of clemency since he was out on the street just seven years later in possession of cocaine. And that first armed robbery was right on the heels of a burglary of someone's home. Even without the commission of the third offense of possession of cocaine this defendant's record was one of a violent, dangerous criminal who was given two chances to turn his life around and failed to take advantage of the opportunity.
Defendant's third offense of possession of cocaine is quite significant. It is common knowledge that there is a direct relationship between the use of addictive narcotics and crimes such as armed robbery. Whether defendant's armed robbery in this case was an outgrowth of addiction on his part is not in the record, but the point is that there is no evidence that it was not.
In our society the people have insisted on legislation to toughen criminal laws. The people are especially concerned about recidivism. In some states legislatures have responded to these concerns by passing "three strikes and you're out" legislation life imprisonment for the third felony offender. Our legislature has responded with the Habitual Offender Law. As the court pointed out in Dorthey, it is the legislature's prerogative to determine the length of time to be imposed for a crime. This prerogative is rendered nugatory if a judge may for purely subjective reasons disregard the will of the legislature under the guise of particularized unconstitutionality. This is the stuff from which flows in the minds of the public a distrust and disrespect for the judiciary.
We have concluded that the record does not support the trial court's opinion that the imposition of the minimum sentence under the Habitual Offender Law on this defendant would be unconstitutional. Defendant's record is such that he is a danger to society so that imprisonment for the rest of his life in the form of a ninety-nine year sentence meets the goal of tailoring the offense to the crime, accomplishes the very legitimate purpose of protecting society from him, and constitutes a punishment that is in direct proportion to the terrible crime of armed robbery by a person who has committed terrible crimes in the past and failed to take advantage of clemency repeatedly extended to him.
Defendant has also appealed his conviction. In his sole assignment of error, the defendant contends that the trial court erred in permitting the jurors to inspect the verbal contents of an unsigned, written, inculpatory statement made to Officer Summers. He argues that publishing the statement to the jury shifted the burden of proof and contributed to the guilty verdict. Defendant does not argue that the statement was made involuntary.
During the testimony of Officer Summers concerning the circumstances surrounding the taking of defendant's statement, the statement was introduced as State Exhibit No. 6 and published to the jury. The clerk read the statement aloud and the jury followed along; however, because a word was omitted by the clerk during the first reading, the statement was read aloud a second time. *529 The copies of the statement were then collected from the jury.
Defendant relies primarily on La.C.Cr.P. art. 793 to support his argument. Nonetheless, Article 793 is a limitation on the type of evidence that the jury can take into the jury room, and prohibits the repetition of recorded testimony to the jury after it has retired to deliberate. Here, the statement was not allowed into the jury room, nor repeated once the jury retired to deliberate. Thus, defendant cites no law to support his argument that the publishing of the statement to the jury during the presentation of the state's shifted the burden of proof. Clearly, the statement and its contents were admissible at trial. Defendant's claim is without merit.
Accordingly, defendant's conviction is affirmed, but his sentence is vacated. The case is remanded to the trial court for resentencing in accordance with the Habitual Offender Law.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED.
PLOTKIN, J., concurs.
PLOTKIN, Judge, concurring.
I concur in the result reached by the majority and in their conclusion that the trial judge insufficiently articulated his reasons for departing from the minimum sentence mandated by the Habitual Offender Law (La. R.S. 15:529.1) on the basis of constitutional excessiveness. I write separately to provide further guidance in determining whether an individual's sentence is unconstitutionally excessive under State v. Sepulvado, 367 So.2d 762 (La.1979), and State v. Dorthey, 623 So.2d 1276 (La.1993), and to urge the Louisiana Supreme Court to clarify the contours of particularized excessiveness review.
Article I, Section 20 of the 1974 Louisiana Constitution states in part:
No law shall subject any person to euthanasia, to torture, or to cruel, excessive, or unusual punishment.
In 1975, it was first suggested that Louisiana judges might be obliged by this language to review the individual sentences of particular defendants for excessiveness. See State v. Pierce, 321 So.2d 523, 524 (La.1975) (Dixon, J., concurring). The Louisiana Supreme Court, however, remained divided over whether the constitution required only that judges review penalty statutes for excessiveness or rather mandated that they review individual sentences as well. See, e.g., State v. Bryant, 325 So.2d 255, 265 (La.1975) (Tate, J., concurring). The call for particularized sentence review persisted, see, e.g., State v. Fisher, 321 So.2d 519, 520 (La.1975) (Dixon, J., concurring), and gained the support of Justice Tate, see, e.g., Bryant, supra, at 265-66, who wrote:
Sooner rather than later this court must face the issue of the added dimension of judicial review provided by Art. I, Section 20, Louisiana Constitution of 1974. This constitutional provision not only prevents subjection of any person by legislature or court to cruel and unusual punishment, but also to "excessive punishment."
State v. Williams, 340 So.2d 1382, 1384 (La. 1976) (Tate, J., concurring). Particularized excessiveness review gained judicial support in the context of mandatory life imprisonment for the distribution of heroin. See State v. Terrebonne, 354 So.2d 1356, 1356-57 (La.1978) (Tate, Calogero, Dennis, JJ., concurring). After years of dodging the issue, see, e.g., State v. Progue, 350 So.2d 1181, 1184 (La.1977), the Louisiana Supreme Court assumed the duty of reviewing individual sentences for excessiveness in State v. Sepulvado, 367 So.2d 762 (La.1979), holding:
We find that the imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional right against excessive punishment that is enforceable by this court on appellate review of his conviction.
Id. at 767.
In Dorthey, supra, at 1280, the Louisiana Supreme Court expanded the scope of particularized excessiveness review to require not only review of those sentences imposed within statutory limits, but also to permit departure below the statutorily mandated minimum sentences of the Habitual Offender Law. The Court promoted for this task the *530 standard of State v. Lobato, 603 So.2d 739, 751 (La.1992):
A punishment is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime.
Dorthey, supra, at 1280. After Dorthey, this Court has been faced with the task of determining whether trial judges have abused their discretion to review sentences under the Habitual Offender Law and other laws for excessiveness. Little pattern can be divined from a comparison of these cases. Compare, e.g., State v. Eggerson, No. 95-1337 (La.App. 4th Cir. 9/15/95) 661 So.2d 1096 with, e.g., State v. Hamilton, No. 95-1363 (La.App. 4th Cir. 9/15/95), 660 So.2d 214. This Court has, however, declined to extend the mandate of Dorthey outside the realm of the Habitual Offender Law, stating:
The case before us is distinguishable from Dorthey. Dorthey was specifically limited to an enhanced sentence under the habitual offender statute and not a mandatory minimum sentence imposed by a substantive criminal statute, as in the instant case. There is nothing in the Dorthey holding that authorizes a trial court to disregard the legislatively mandated sentencing provisions of a substantive, unenhanced criminal statute and we do not interpret Dorthey as authority to ignore the legislative mandate of La.R.S. 40:966(C)(1).
State v. Hebert, No. 94-K-2223 (La.App. 4th Cir. 3/16/95), 652 So.2d 1049, 1051.
Given this state of the particularized excessiveness jurisprudence, there is little guidance that can be offered. Assuming this doctrine to be viable, what is its proper extent? Particularized excessiveness review was devised as a means to guard against abuse of judicial sentencing discretion within broad legislative parameters. Thus, Justice Tate, a proponent of particularized excessiveness review and a seminal figure in its acceptance in Louisiana, wrote,
The experience of other states indicates that from these formal sources, including sentencing institutes in a given jurisdiction, a body of precedential law can develop affording coherence and a rational basis to the sentencing process.
Most of the present national recommendations recognize that a large discretion must be entrusted to the sentencing function, to individualize the sentence according to the circumstances of the crime and of the offender before the court. However, important in the rule of law, the recommendations emphasize principled exercise of this discretion, with articulated reasons for variations from normal ranges, and with appellate examination to assure some degree of principled regularity in the exercise of this large discretion.
Williams, supra, at 1389 (Tate, J., concurring). Justice Tate's statement of purpose was accepted by the Louisiana Supreme Court in State v. Sepulvado, 367 So.2d 762, 767 (La.1979):
The general purposes of sentence review include the development and application of criteria for sentencing and the promotion of respect for the law by increasing the fairness and by correcting abuses of the sentencing power.
Judicial acceptance of particularized sentencing review, however, was driven by the legislature's reduction of judicial discretion in the form of indiscriminate mandatory sentences that could work injustice in the exceptional case. Thus, Justice Dennis chastised the legislature for their response to Louisiana's struggles with heroin distribution:
This total failure to tailor the mandatory life sentence in any meaningful way to the culpability of the offender, the gravity of the offense, and the circumstances of each case causes the life sentence in such a case as this to be constitutionally suspect.
State v. Terrebonne, 354 So.2d 1356, 1358 (La.1978) (Dennis, J., concurring). Then in Dorthey a doctrine designed to check judicial discretion was used to grant judges greater discretion in sentencing. Because precedential law has failed to develop a coherent and rational basis for the sentencing process, as hoped by Justice Tate, I urge the Louisiana Supreme Court to reexamine State v. Dorthey and particularized excessiveness review.
Each particularized excessiveness review would benefit by considering the purpose of *531 the review and by an understanding of the exceptional nature of the doctrine. That the doctrine must be exceptional is apparent from the presumption of constitutionality arising from legislative supremacy in this area, which was acknowledged by the Louisiana Supreme Court even in Dorthey:
It is a well established principle that the determination and definition of acts which are punishable as crimes is purely a legislative function. It is the Legislature's prerogative to determine the length of the sentence imposed for crimes classified as felonies. Moreover, courts are charged with applying these punishments unless they are found to be unconstitutional.
Dorthey, supra, at 1278 (citations omitted). The concurrence added,
However, the minimum sentences provided for by the multiple offender statute should be presumed constitutional. The trial court should not deviate from the statutory minimum sentences unless it clearly finds the sentence "is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering." In my view, such a situation would be rarely presented.
Id. at 1281 (Marcus, J., concurring). The exceptional circumstances of Dorthey would have resulted in unfairness if a drug addict were to be sentenced to twenty years at hard labor under the Habitual Offender Law for his fourth conviction for possession of crack without any other aggravating circumstances beyond his addiction.
Particularized excessiveness review occurs primarily in two contexts, each with a different purpose. When a trial judge determines a sentence from the statutory range provided by a typical, carefully tailored penalty statute, there is a strong presumption that the sentence is within constitutional parameters. In such a case, the particularized excessiveness doctrine acts as a check upon the trial judge's sentencing discretion. Only when the defendant succeeds in proving, or when the record clearly shows, that under these facts this defendant is exceptional should the presumption be rebutted and the sentence found an abuse of judicial sentencing discretion. Second, when a trial judge departs from a mandatory minimum sentence, such as one mandated by a penalty enhancement scheme like the Habitual Offenders Law, there is also a strong presumption of constitutionality. In this context, the particularized excessiveness doctrine provides discretion that will rarely be needed. This presumption is rebutted when the defendant successfully proves or the record clearly reveals that this defendant is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
In either case, a strong presumption of constitutionality will be overcome only exceptionally by facts recited by the trial judge or apparent from the record. For the foregoing reasons, I concur.