[BYRNES, Judge,
dissenting with reasons.
I respectfully dissent. I would vacate the defendant’s multiple sentence which is below the minimum sentence mandated under La. R.S. 15.529.1.
In State v. Hyorth, 95-1181 (La.App. 4 Cir. 9/15/95), 661 So.2d 1059, this court found that the trial court clearly abused its discretion by sentencing the defendant below the minimum under La.R.S. 15:529.1. This court pointed out the acute severity of the crimes which involved the possibility of great bodily harm or death to the victims because the perpetrator had convictions for armed robberies. This court noted that when the trial court considers the mitigating circumstances of the particular defendant in determining the sentence to be imposed, the focus is on the offense. A sentence is grossly disproportionate to the severity of the offense so as to be unconstitutionally excessive, when the crime and punishment, considered in light of the harm done to society, shocks the sense of justice. State v. Hogan, 480 So.2d 288, 291 (La.1985).
In State v. Young, 94-1636 (La.App. 4 Cir. 10/26/94) 663 So.2d 525, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223, this court found that the trial court erred in sentencing the defendant to 30 years at hard labor rather than the mandatory minimum sentence of ninety-nine and one-half years prescribed by the Habitual Offender Law. In reviewing the sentence, this court ^stated:
One of the basic principles universally applied by courts in testing constitutionality is the presumption of constitutionality. In the application of this principle a trial court considering whether the minimum sentence prescribed by the legislature for the particular crime committed by a defendant would be unconstitutional if applied to a particular defendant may do so only if there is substantial evidence to rebut the presumption of constitutionality. The trial court may not depart from the legislaturely (sic) mandated minimum simply because of some subjective impression or feeling about the defendant.
Id., p. 5, 663 So.2d at 527.
This court then concluded that the reasons given by the trial judge to disregard the Habitual Offender Law were “purely subjective”. This court continued:
In our society the people have insisted on legislation to toughen criminal laws. The people are especially concerned about recidivism. In some states legislatures have responded to these concerns by passing “three strikes and you’re out” legislation — life imprisonment for the third felony offender. Our legislature has responded with the Habitual Offender Law. As the court pointed out in Dorthey, it is the legislature’s prerogative to determine the length of time to be imposed for a crime. This prerogative is rendered nugatory if a judge may for purely subjective reasons disregard the will of the leg *424 islature under the guise of particularized unconstitutionality. This is the stuff from which flows in the minds of the public a distrust and disrespect for the judiciary.
Id., pp. 6-7, 663 So.2d at 528.
Declaring a given sentence under the Habitual Offender Law unconstitutionally excessive should be the rare act, not a common place practice. Dorthey, supra, 623 So.2d at 1281 (Marcus, J., concurring). The trial court must do more than mechanically utter the phrases contained in |⅜Dorthey to justify departing from the legislatively mandated sentences for crimes.
The Louisiana Supreme Court recently remanded the case for the trial court to justify its deviation from the statutorily-mandated minimum sentence in State v. Johnson, 96-1263 (La.6/28/96), 676 So.2d 552, and State v. Kelly, 95-2335 (La.2/2/96), 666 So.2d 1082, although the trial court had stated reasons for imposing a sentence below the statutory minimum. See also State v. Webster, 95-2484 (La.2/2/96), 666 So.2d 654; State v. Hamilton, 95-2462 (La.2/2/96), 666 So.2d 655. In the last three cited cases, the Supreme Court emphasized that: “The substantive power to define crimes and prescribe punishments lies in the legislative branch of government. Jones v. Thomas, 491 U.S. 376, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989).” Kelly, 666 So.2d at 1082-3, Calogero, C.J., concurring. See also Webster, supra, 666 So.2d at 655; and Hamilton, supra, 666 So.2d at 656.
In the present case the defendant’s background was reviewed at the multiple bill hearing as follows:
THE COURT:
What’s his background. State?
MR. MONISTERE (FOR THE STATE):
He’s got a conviction for unauthorized use of a movable which is a felony in 1993. In 1989 he’s got a conviction for simple robbery. He also has arrests, your Honor, for battery, theft, possession of stolen — that’s the same one. Aggravated battery arrest.
THE COURT:
All right.
MR. MONISTERE:
Which was refused. In 1988 he had an arrest for armed robbery. In 1988 he also had, the last one is as a juvenile, he’s got a theft which was refused but he pled guilty on a 69 as a juvenile.
UTHE COURT:
The 1988 arrest for armed robbery, that reduced to a simple robbery?
MR. MONISTERE:
No, your Honor. That was another arrest. Let me double cheek it. That was another arrest, Judge.
THE COURT:
What was his sentence for the simple robbery?
MR. MONISTERE:
Three years.
THE COURT:
When?
MR. MONISTERE:
1989.
THE COURT:
1990 was the unauthorized use of a movable?
MR. MONISTERE:
1993. He got 18 months.
THE COURT:
In ’93?
MR. MONISTERE:
Correct, Judge.
THE DEFENDANT:
You got that wrong.
MR. MONISTERE:
Let me double check the cert. 1991. January 11,1991.
THE COURT:
January of ’91 he got 18 months. That’s been his only problem since February of ’96 when this thing arises? It’s been his last problem?
MR. MONISTERE:
Since January ’91, Judge, he had an arrest for theft which was refused.
THE COURT:
When?
IsMR. MONISTERE:
June 8, 1993. December 2, 1993 he had a municipal arrest for disturbing the peace *425 and battery. In October of ’94 had he (sic) a traffic arrest for no driver’s license, license plate, or proof of insurance.
In the present case the defendant is a repeat offender with prior arrests and convictions. He had a conviction for unauthorized use of a movable in 1993. In 1989 he had a conviction for simple robbery. He also had arrests for battery, theft, aggravated battery, and armed robbery. According to the prosecutor, the defendant entered a plea of guilty “to a 69 [in violation of La.R.S. 14:69, illegal possession of stolen things] as a juvenile.” He had municipal arrests for disturbing the peace and battery, as well as traffic violations.
At the sentencing hearing in the present case, the trial court initially sentenced the defendant to six years at hard labor with credit for time served for forgery. The trial court stated that he was not convinced that the defendant took the victim’s social security check but he was convinced that the defendant did attempt to cash the social security check. The trial court then vacated the original sentence and resentenced the defendant as a third felony offender again to six years at hard labor with credit for time served. The result in the difference in the two sentences the defendant received was the loss of good time in the present case.
The trial court stated that he did not know any of the circumstances of the robbery case but the State did not indicate that there was any violence where someone may have been injured or hurt in any way in the robbery case. In State v. Young, supra, 663 So.2d at 528, this court noted:
Defendant committed a classic armed robbery. He held a gun on the victim and forced him to write |6Qut cheeks to cash while his life was being threatened. The legislature has concluded that this is such a serious offense that even for a first offender the minimum is five years, but the maximum may be ninety-nine years. Here we have a defendant who has been convicted of one armed robbery already and was apparently given a great deal of clemency since he was out on the street just seven years later in possession of cocaine. And that first armed robbery was right on the heels of a burglary of someone’s home. Even without the commission of the third offense of possession of cocaine this defendant’s record was one of a violent, dangerous criminal who was given two chances to turn his life around and failed to take advantage of the opportunity.
In State v. Hyorth, supra, this court noted that the original offense and the offense used for the multiple bill conviction were for armed robberies. This court considered the acute severity of the crime of armed robbery where the perpetrator put the victims in fear of their lives and which “involved the possibility of great bodily harm or death to the victims because the perpetrator was armed.” Id., 661 So.2d at 1062.
In the present case the trial court did not know the circumstances of the robbery but noted that the State did not indicate that someone was hurt. It is possible that the court was discussing the simple robbery conviction or it is possible that he referred to the armed robbery arrest. If the trial court was referring to the simple robbery conviction, the very act of robbery is threatening. The conviction for the offense of simple robbery is less violent than the offense of armed robbery; however, it is still violent because of the possibility that someone could be hurt if he/she resisted although the perpetrator did not have a weapon.
Although in the present case the trial court gave reasons for imposing a 17sentence below the mandatory minimum sentence under the Habitual Offender Law and referred to Dorthey, the trial court’s statements are not sufficient to justify the sentence. Under the totality of circumstances the trial court did not make a proper determination that the imposition of six years is an adequate sentence to defeat the presumption that the legislative sentence is constitutional as applied to this defendant, considering that the statutorily mandated minimum sentence under the multiple Ml statute is life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
Accordingly, I would grant the writ, vacate the defendant’s multiple bill sentence, and remand for resentencing.