769 So.2d 1280 (2000)
STATE of Louisiana
v.
Theodore S. SMITH.
No. 00 KA 0423.
Court of Appeal of Louisiana, First Circuit.
November 3, 2000.
*1281 Walter P. Reed, District Attorney, Covington, Dorothy Pendergrast, Metairie, for Appellee, State of Louisiana.
Frank Sloan, Covington, for Defendant/Appellant, Theodore S. Smith.
Before: CARTER, C.J., LeBLANC, and FOIL, JJ.
CARTER, C.J.
Defendant, Theodore S. Smith, and codefendant Bobby J. Turner were jointly charged by bill of information with armed robbery, a violation of LSA-R.S. 14:64. After trial by jury, defendant was found guilty as charged.[1] On April 16, 1998, defendant was sentenced to imprisonment at hard labor for fifty years without benefit of parole, probation, or suspension of sentence. The state filed a habitual offender bill of information and, after a hearing, defendant was adjudicated a third felony habitual offender. The trial court vacated the April 16 sentence and imposed a habitual offender sentence of imprisonment at hard labor for life without benefit of parole, probation, or suspension of sentence.
On appeal, we vacated defendant's habitual offender adjudication and sentence and remanded the case for a hearing and disposition on defendant's motion for post verdict judgment of acquittal, since the trial court had failed to rule on the motion prior to sentencing as required by LSA-C.Cr.P. art. 821 A. See our unpublished opinion in State v. Smith, 98-2232 (La. App. 1st Cir.6/25/99), 744 So.2d 224.
On remand after a hearing held on November 8, 1999, the trial court denied the motion for post verdict judgment of acquittal; and on November 12, 1999, the trial court sentenced defendant to imprisonment at hard labor for fifty years without benefit of parole, probation, or suspension of sentence. On January 3, 2000, the trial court conducted a habitual offender hearing; and during this hearing, after the state submitted the matter on the basis of the evidence previously introduced at the original habitual offender hearing, the court adjudged defendant a third felony habitual offender and sentenced defendant as such to imprisonment at hard labor for life without benefit of parole, probation, or suspension of sentence. Defendant has *1282 appealed, urging four assignments of error.

FACTS
During the late evening hours of June 29, 1997, officers with the Slidell Police Department went to a truck stop in Slidell, Louisiana in response to a call that two subjects in a small red pickup were soliciting money from people in the parking lot at the truck stop. When Officer Barry VanShoubrouek arrived there, he stopped Turner's red Chevrolet S-10 pickup. Co-defendant Bobby Turner complied with VanShoubrouek's request to him to exit the vehicle. The only other occupant, defendant, remained in the truck. VanShoubrouek asked Turner what he and defendant were doing. Turner told the officer he was out of money and trying to get back to Greenville, Mississippi. VanShoubrouek ran a NCIC (National Crime Information Center) computer check for outstanding warrants for Turner and determined there were no such warrants. While Officer Rachel Smith was at the passenger side of the pickup talking to defendant, VanShoubrouek noticed from the opposite side of the pickup that defendant had a knife underneath his left leg out of the view of Officer Smith. Defendant told VanShoubrouek the knife belonged to him. After finding no warrants for Turner, VanShoubrouek went to the police station and returned with a five dollar gasoline voucher to allow Turner to purchase gasoline. VanShoubrouek noted the license plate number of the pickup, gave the voucher to Turner, told Turner and defendant to leave, and warned that if they came back and solicited money they would be arrested.
A few hours later at approximately 1:00 a.m. the following morning, Turner entered a Chevron gas station where station employee Gerald J. Clark was on duty. Turner told Clark his truck needed a jump start. Turner began asking customers at the station if they had jumper cables, but none of them had any.
James Pursley, who lived near the station, was walking to the station to buy chips and beer when he observed a single vehicle, Turner's pickup, parked near the station with the pickup's lights turned off and the motor running. Defendant was in the driver's seat bent over. Pursley went inside the station. Clark asked Pursley if he had jumper cables. Pursley stated he did not, made his purchase and left.
Turner walked up to the counter ostensibly to purchase a candy bar. When Clark was handing over change from the purchase, Turner pulled a knife from his side and told Clark to give him all the money from the cash register. Clark initially thought Turner was joking but then (realizing Turner was not) gave Turner between $150.00 and $170.00. Turner turned and before walking out told Clark not to follow him as he had a partner outside who was armed with a gun.
St. Tammany Parish Sheriff's Detective Chris Bell went to the Chevron station following the report of the armed robbery. He spoke to Clark and Pursley. Physical descriptions of Turner and defendant and the pickup were broadcast over the police radio frequency. A dog from the Slidell K-9 division was brought to the scene for tracking purposes.
In the meantime, after receiving the police radio broadcast, VanShoubrouek realized that Turner and defendant and their vehicle matched the descriptions given in the broadcast. This information was conveyed to Bell along with the license number of the pickup.
Later, after being advised by Pearl River Patrolman David King that he was watching a pickup (matching the one being sought) at a Chevron station in Pearl River, Bell and other deputies went to the location, where they apprehended defendant and Turner, placed them under arrest, and advised them of their constitutional rights, all of which occurred within a few hours of the instant armed robbery. During a search of defendant, the police *1283 seized $70.00 in cash from his person. An inventory search of Turner's truck yielded a large knife that was in the glove compartment.
Pursley made positive identifications of Turner and defendant after their arrests. Clark, who only saw Turner at the time of the robbery, identified Turner as the robber.
Turner confessed to the armed robbery in a tape-recorded statement to St. Tammany Parish Deputy Sheriff Jim Richard on July 1, 1997. On the following day, Richard received notice defendant wanted to speak to him. Initially, defendant told Richard that he was sleeping in the pickup during most of the night of the armed robbery. When Richard informed defendant he did not believe the statement, defendant changed his story and stated he would admit he was an accessory or principal to the crime, while claiming that he did not know Turner was going to commit the robbery and that he did not receive any of the stolen money.
Turner's trial testimony included the following. Defendant drove the pickup to the Chevron station where the instant armed robbery occurred. Defendant gave Turner the knife. Defendant told Turner to go inside the station and told him not to "threaten the [station employee] or pull [the] knife on [the employee]" but to "let [the employee] see the knife," and tell the employee to give him all the money. Defendant also told Turner that, if Turner did not threaten the employee or pull the knife, Turner's conduct would not be an armed robbery. Turner stated that defendant drove the pickup from the scene of the robbery and that he and defendant divided the stolen money ($168.00) equally between them.

ASSIGNMENT OF ERROR NO. 1
In this assignment, defendant contends that the trial court erred during the January 3, 2000 habitual offender sentencing hearing when the court vacated the April 16, 1998 fifty-year sentence and did not vacate the November 12, 1999 fifty-year sentence.
Louisiana Revised Statute 15:529.1 D(3) requires the trial court to vacate the previously imposed sentence when an habitual felony offender sentence is imposed. Herein, during the January 3, 2000 habitual offender sentencing hearing, although the court erroneously vacated the April 16, 1998 fifty-year sentence it had previously vacated, it is obvious that the intent of the court was to instead vacate the November 12, 1999 fifty-year sentence.[2] Therefore, to eliminate any confusion and to conform with the requirements of LSA-R.S. 15:529.1 D(3), we vacate defendant's November 12, 1999 fifty-year sentence. Cf. State v. Hunt, 573 So.2d 585, 587 (La.App. 2nd Cir.1991). See also State v. Thomas, 95-2348, pp. 6-7 (La.App. 1st Cir.12/20/96), 686 So.2d 145, 149, writ denied, 97-0192 (La.3/14/97), 690 So.2d 36. Accordingly, this assignment lacks merit.

ASSIGNMENT OF ERROR NO. 2
In this assignment, defendant generally asserts that his sentence is excessive. Specifically, he notes that the trial court did not articulate any reasons for imposing a sentence of life imprisonment without benefit of parole, probation, or suspension of sentence.
Initially, we note that, although defendant did not file a written motion to reconsider the January 3, 2000 life sentence, defense counsel indicated to the trial court that he would file a motion for reconsideration of the sentence based on excessiveness, which we deem as preserving the excessiveness claim for appellate review.
*1284 As a third felony habitual offender whose third felony conviction was for armed robbery, a crime of violence under LSA-R.S. 14:2(13)(w), defendant faced and received the mandatory sentence of life imprisonment without benefit of parole, probation, or suspension of sentence. See LSA-R.S. 15:529.1 A(1)(b)(ii).
State v. Johnson, 97-1906, p. 6 (La.3/4/98), 709 So.2d 672, 676, the Supreme Court reexamined the issue of when State v. Dorthey, 623 So.2d 1276 (La.1993) permits a downward departure from the Habitual Offender Law's mandatory minimum sentences and concluded as follows:
A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. See State v. Dorthey, supra at 1281 (Marcus, J., concurring); State v. Young, [94-1636 (La.App. 4th Cir.10/26/95), 663 So.2d 525]. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality.
A trial judge may not rely solely upon the non-violent nature of the instant crime or of past crimes as evidence which justifies rebutting the presumption of constitutionality. While the classification of a defendant's instant or prior offenses as non-violent should not be discounted, this factor has already been taken into account under the Habitual Offender Law for third and fourth offenders. LSA-R.S. 15:529.1 provides that persons adjudicated as third or fourth offenders may receive a longer sentence if their instant or prior offense is defined as a "crime of violence" under LSA-R.S. 14:2(13). Thus the Legislature, with its power to define crimes and punishments, has already made a distinction in sentences between those who commit crimes of violence and those who do not. Under the Habitual Offender Law those third and fourth offenders who have a history of violent crime get longer sentences, while those who do not are allowed lesser sentences. So while a defendant's record of nonviolent offenses may play a role in a sentencing judge's determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive.
Instead, to rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.

Young, 94-1636 at pp. 5-6, 663 So.2d at 528 (Plotkin, J., concurring).
When determining whether the defendant has met his burden of proof by rebutting the presumption that the mandatory minimum sentence is constitutional, the trial judge must also keep in mind the goals of the Habitual Offender Law. Clearly, the major reasons the Legislature passed the Habitual Offender Law were to deter and punish recidivism. Under this statute the defendant with multiple felony convictions is treated as a recidivist who is to be punished for the instant crime in light of his continuing disregard for the laws of our state. He is subjected to a longer sentence because he continues to break the law. Given the Legislature's constitutional authority to enact statutes such as the Habitual Offender Law, it is not the role of the sentencing court to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders. Instead, the sentencing court is only allowed to determine whether the particular defendant before it has proven that the mandatory minimum sentence *1285 is so excessive in his case that it violates our constitution.
Johnson, 709 So.2d at 676-77.
Although the trial court did not articulate reasons for imposing this life sentence, the failure to articulate reasons when imposing such a mandatory life sentence is not an error. Articulating reasons or sentencing factors would be an exercise in futility since the trial court has no sentencing discretion. State v. Jones, 31,613, p. 28 (La.App. 2nd Cir.4/1/99), 733 So.2d 127, 146, writ denied, 99-1185 (La.10/1/99), 748 So.2d 434. In any event, after carefully reviewing the entire record, we find no evidence in this record that rebuts the presumption of constitutionality of defendant's life sentence. Hence, this assignment lacks merit.

ASSIGNMENT OF ERROR NO. 3
In this assignment, defendant contends that the trial court erred by failing to provide written reasons for its January 3, 2000 determination that defendant is a third felony habitual offender as required by LSA-R.S. 15:529.1 D(3).
Louisiana Revised Statute 15:529.1 D(3) requires a trial court to provide written reasons for its habitual offender determination. Herein, the record does not contain any such written reasons. Nevertheless, at the January 3, 2000 habitual offender sentencing proceeding, the state submitted the matter based on the evidence introduced at the earlier (June 3, 1998) habitual offender hearing; and in adjudging defendant to be a third felony habitual offender the trial court stated that it was making the same ruling it had made at the June 3, 1998 habitual offender hearing based on the evidence introduced on June 3, 1998.
Given the above statement by the trial court, we find that any failure to provide written reasons for this habitual felony offender adjudication constitutes harmless error. See LSA-C.Cr.P. art. 921; State v. Perkins, 99-1084, p. 2 (La.App. 5th Cir.1/25/00), 751 So.2d 403, 406. Accordingly, defendant's assignment lacks merit.

ASSIGNMENT OF ERROR NO. 4
In this assignment, defendant notes that the trial court failed to advise him of the LSA-C.Cr.P. art. 930.8 time limitations for the filing of post-conviction relief applications. Thus, defendant submits that the trial court should be directed to provide him written notice of those time limitations within ten days of the rendition of our opinion in this case.
The referenced statute provides that, at the time of sentencing, the trial court shall inform the defendant of the prescriptive period for applying for post-conviction relief. Nevertheless, a failure to do so on the part of the trial court has no bearing on the sentence and is not grounds to reverse the sentence or remand the case for resentencing. See State ex rel. Glover v. State, 93-2330, pp. 20-21 (La.9/5/95), 660 So.2d 1189, 1201.
As defendant correctly notes, the record reflects that the trial court did not advise defendant at the January 3, 2000 sentencing hearing of the prescriptive period in accordance with art. 930.8 C.[3] Accordingly, the trial court hereby is directed to give defendant written notice of the applicable prescriptive period for applying for post-conviction relief within ten days of rendition of this opinion and to file written proof in the record of the proceedings that defendant received the notice. See State v. Hendon, 94-0516, p. 8 (La.App. 1st Cir.4/7/95), 654 So.2d 447, 450-51.

CONCLUSION
For the reasons set forth in this opinion, the defendant's conviction, habitual offender adjudication and habitual offender sentence *1286 are affirmed. The case is remanded to the trial court to give defendant written notice of the applicable prescriptive period for applying for post-conviction relief within ten (10) days of rendering of this opinion and to file written proof in record of these proceedings that defendant received the notice.
CONVICTION, HABITUAL OFFENDER ADJUDICATION AND HABITUAL OFFENDER SENTENCE AFFIRMED. REMANDED WITH INSTRUCTIONS.
NOTES
[1] At trial, Bobby J. Turner testified as a state witness, indicating he pled guilty and faced a sentence of twenty-five to ninety-nine years imprisonment without parole.
[2] Although the pertinent minute entry of January 3, 2000 states that the trial court vacated the November 12, 1999 sentence, the transcript shows that the court vacated the April 16, 1998 sentence. Whenever there is a discrepancy between the transcript and the minutes, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983).
[3] We note the prior prescriptive period of three years was amended to two years by 1999 La. Acts No. 1262, § 1.