Judgment rendered August 27, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,408-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA            Appellee

Versus

SELMA THOMAS MANGHAM            Appellant

* * * * *

Appealed from the
Thirty-Ninth Judicial District Court for the
Parish of Red River, Louisiana
Trial Court No. 141,615

Honorable James H. Boddie, Jr., *Ad Hoc*, Judge

* * * * *

LOUISIANA APPELLATE PROJECT      Counsel for Appellant
By: Christopher A. Aberle

JULIE C. JONES                  Counsel for Appellee
District Attorney

R. BENNETT LANGFORD, III
Assistant District Attorney

* * * * *

Before STEPHENS, THOMPSON, and MARCOTTE, JJ.

**STEPHENS, J.**,

This criminal appeal arises from the 39th Judicial District, Parish of Red River, State of Louisiana, the Honorable James H. Boddie, Jr., Judge, presiding *ad hoc*. On August 2, 2024, a unanimous jury convicted the defendant, Selma Thomas Mangham ("Mangham"), of sexual battery of a victim under the age of thirteen, a violation of La. R.S. 14:43.1(A)(2) and (C)(2); molestation of a juvenile under the age of thirteen, a violation of La. R.S. 14:81.2(A)(1) and (D)(1); and indecent behavior with a juvenile under the age of thirteen, a violation of La. R.S. 14:81(H)(2). The trial court sentenced Mangham to a total of 30 years on the three convictions without the benefit of probation, parole, or suspension of sentence, with credit for time served. Mangham appeals, urging that his trial counsel failed to request a downward departure from the mandatory minimum sentences, and his sentence is excessive under the circumstances. For the reasons stated below, we affirm.

## FACTS AND PROCEDURAL HISTORY

On November 18, 2021, the defendant, Selma Thomas Mangham, was charged by bill of information (which was amended on July 31, 2024) with sexual battery upon A.K., D.O.B. 10/27/2011, when the victim is under the age of thirteen, molestation of a juvenile when the victim is under the age of thirteen, and indecent behavior with a juvenile under the age of thirteen. The State alleged that each crime took place between February 17, 2019, and August 17, 2021. Facebook Messenger screenshots contained in the record show that Katie Mangham, the mother of the minor children M.S. and S.P, found out about Mangham touching the young girls and reported the incident to the Red River Parish Sheriff's Office. An arrest warrant was signed by a

judge on August 12, 2021, and on August 13, 2021, Mangham was arrested. Following investigation into the matter and Mangham's arrest, the State charged Mangham for the alleged acts he committed against A.K.[1] On June 6, 2022, the State filed a notice that it intended to use evidence from other crimes to prove Mangham's propensity to engage in sexually assaultive behavior and his lustful disposition towards children at Mangham's trial.[2] La. C.E. art. 412.2. A jury trial commenced on July 30, 2024.

Detective Darren Keel, an investigator with the Red River Parish Sheriff's Office, testified that he was involved in the investigation into the claims against Mangham. At the time of this investigation, there were two alleged victims, M.S. and S.P. Following the victims' interviews at the Gingerbread House, Mangham was arrested on August 13, 2021. After Mangham's arrest and interview with the officers, another victim, K.C., came forward. K.C. then participated in an interview at the Gingerbread House. Thereafter, two more victims came forward, I.K. and A.K., and they were interviewed at the Gingerbread House as well.

Jordan Hughes, a forensic interviewer at the Gingerbread House, testified as an expert witness at trial. Ms. Hughes conducted interviews of the victims involved in this matter. Ms. Hughes testified that A.K. was nine years old at the time of the interview, and I.K. was ten years old. Although I.K. initially was not willing to talk, I.K. eventually revealed that she had been touched by Mangham or "Poppa." On the same day, Ms. Hughes

---

[1] Notwithstanding allegations against Mangham involving other young girls, the bill of information indicates that Mangham was charged with instances only relating to A.K.

[2] While Mangham was only charged with instances related to A.K., the State introduced into evidence the Gingerbread House interviews of M.S., S.P., K.C., and I.K.; these children also testified at trial.

interviewed I.K.'s sister, A.K., who was more receptive to speaking with the interviewer. Ms. Hughes testified that she also interviewed M.S., S.P., and K.C.

During her interviews with M.S. and S.P., both children made disclosures to Ms. Hughes. M.S. indicated that Mangham touched her private part on top of and under her clothes. Ms. Hughes testified that M.S. demonstrated the touching. Similarly, S.P. disclosed that Mangham touched her lower stomach, breast, and private part areas on top of and under her clothes. Ms. Hughes indicated to the court that during K.C.'s interview, the child was nervous but ultimately made a disclosure to Ms. Hughes, indicating that Mangham or "Poppa Tom" tried to take K.C.'s clothes off more than one time. K.C. also told Ms. Hughes that Mangham touched her private area by rubbing his finger all through her parts. Ultimately, Ms. Hughes testified that the statements given by the children were, in her opinion, consistent.

A.K. testified at trial, and she watched her Gingerbread House interview in court. She indicated that she remembered the interview, she told the truth, and she added that she had told her MawMaw that Mangham had showed her his private parts. However, A.K. stated that MawMaw did not believe her and told her that she should not say things like that because Mangham could get in trouble. A.K. testified that she would go to Mangham's house three to four times a week, and every time she was there Mangham would touch her when she was near him or sitting next to him on his armchair. A.K. stated that the touching began when she was around seven years old and stopped when she was about nine years old. When A.K. would ask Mangham to stop, A.K. testified that he would apologize but then

start again after a little bit. A.K. told the court that Mangham would cover them with a blanket when the touching occurred. She also relayed an instance where Mangham removed the blanket and showed A.K. his private parts while smiling at her.

M.S., A.K. and I.K.'s cousin, also testified at trial, watched her Gingerbread House interview, and indicated that she remembered the video and that everything she said during the interview was true. M.S. stated that she would go to Mangham's house multiple times a week, and he would touch her while they were in his armchair with a blanket covering them. She relayed the instances when Mangham touched her under her clothes, and she indicated that she was scared when he touched her and that it would hurt.

Similarly, S.P., M.S.'s sister and A.K. and I.K.'s cousin, testified at trial and communicated that everything she said in her Gingerbread House interview was true. S.P. indicated that she went to Mangham's house almost every weekend, and he would touch her most weekends for about two years. She testified that the touching would occur when she sat with him in his chair. S.P. stated that she did not like it at all when Mangham touched her and that it made her very uncomfortable.

K.C., 15 years old at the time of trial, testified that everything she said in her Gingerbread House interview was true. K.C. stated that Mangham threatened her a lot, stating that she would not be coming home for dinner, and she indicated that Mangham threatened to shoot her with his gun a lot of times. K.C. testified that she would go to Mangham's house about twice a month, and he would try to touch her and pull her pants down during those visits. This went on for about two years, according to K.C. She stated that she would be terrified each time.

4

Lastly, I.K. testified at trial and indicated that everything she said in her Gingerbread House interview and wrote down in the interview was true. I.K. stated that she and her sister, A.K., would visit Mangham's house on weekends and holidays. Almost every time she went to Mangham's house, he would touch her while they sat in the armchair together. She testified that she did not like when Mangham would touch her, but she would continue to sit with him when he asked because she was worried her parents would get mad at her for declining Mangham's offer to sit with him.

Brenda Mangham, Mangham's wife, testified at trial that she and Mangham have been married for 53 years and have three children together. Apart from their three children, Ms. Mangham indicated that she and her husband have raised 68 children over the years. None of the children, according to Ms. Mangham, complained that Mangham was inappropriate towards them. She testified that Mangham was a modest person and instructed children on numerous occasions to put clothes on if he felt they were dressed immodestly. Ms. Mangham stated that the grandchildren would sit on the arms of Mangham's chair and never on his lap due to the size of his belly and sensitive spots on his legs. She also denied ever having a conversation with A.K. about Mangham exposing himself to her.

Following testimony from friends and family of Mangham about his reputation in the community as an honest person and his treatment of children, the State and the defense made their closing arguments, and the trial court gave the jury instructions. Ultimately, on August 2, 2024, the jury unanimously voted to convict Mangham as charged on all three counts. Mangham filed a motion for new trial and a motion for post-verdict judgment of acquittal on October 7, 2024.

5

At the hearing held on October 10, 2024, the trial court denied Mangham's motions for new trial and post-verdict judgment of acquittal. During the sentencing portion of the hearing, the trial court emphasized that the legislature deems the crimes for which Mangham was found guilty to be heinous and egregious offenses and noted that Mangham's counsel, being able and capable, had explained the range of sentencing for the crimes. The trial court stated that Mangham took away the innocence of the young girls involved in the trial and found all the girls who testified to be credible. It noted one mitigating factor, which was that Mangham was a first felony offender.[3] The trial court then sentenced Mangham to 25 years at hard labor to be served without the benefit of parole, probation, or suspension of sentence on count one, sexual battery on a victim under the age of thirteen. For the crime of molestation of a juvenile under the age of thirteen, the trial court imposed a 25-year-hard labor sentence without the benefit of probation, parole, or suspension of sentence. The trial court ordered that these two sentences be served concurrently "with the exception of five years of that sentence." Regarding count three, indecent behavior with juveniles, the trial court sentenced Mangham to ten years at hard labor, to be served without the benefit of parole, probation, or suspension of sentence. In total, the trial court stated that Mangham would have a 30-year-sentence with credit for time served. Mangham filed the instant appeal.

---

[3] There was a PSI in this matter; the transcript reflects the trial court's instructions that the PSI be filed into and made a part of the record.

## DISCUSSION

### *Ineffective Assistance of Counsel*

In his first assignment of error, Mangham claims that his trial counsel was ineffective for failing to request a downward departure from the mandatory minimum sentences due to Mangham's advanced age and health problems. Similarly, Mangham maintains that his attorney failed to file a motion to reconsider the sentences and raise the issue that they are excessive under the circumstances. Mangham argues that there was no strategic reason for his trial counsel not to request a downward departure or file a motion to reconsider sentence. This performance was deficient, according to Mangham, which resulted in prejudice towards Mangham because this failure prevented the trial court from reviewing whether Mangham was "exceptional" and/or whether his circumstances warranted a departure from the mandatory minimum sentence. Mangham also maintains that he was prejudiced by his trial attorney's failure to preserve the issue of excessiveness for appeal.

In reply, the State articulates that Mangham must first show that his attorney's performance was deficient, and second, that this deficiency prejudiced the outcome of the case. The State maintains that counsel's failure to request a downward departure does not equate to deficient performance. Furthermore, the State contends that there is no reasonable probability that Mangham's sentence would have been different had trial counsel filed a motion to reconsider sentence or requested a downward departure. Even if this Court finds that trial counsel's decision to not request a downward deviation amounted to deficient performance, the State urges

that Mangham still failed to make any showing that such performance prejudiced the outcome of the case.

The Supreme Court set out the two-prong test for a defendant claiming ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984): that counsel's performance was deficient; and the deficiency prejudiced his defense. *State v. Hilliard*, 52,652 (La. App. 2 Cir. 8/14/19), 278 So. 3d 1065, *writ denied*, 19-01701 (La. 7/24/20), 299 So. 3d 68. Both the Louisiana and federal constitutions guarantee a criminal defendant's right to the effective assistance of counsel. U.S. Const. Amend. VI; La. Const. art. I, § 13; *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); *State v. Brooks*, 94-2438 (La. 10/16/95), 661 So. 2d 1333; *State v. Bayles*, 53,696 (La. App. 2 Cir. 11/17/21), 329 So. 3d 1149. Under the standard for ineffective assistance of counsel set out in *Strickland v. Washington*, *supra*, adopted by Louisiana's Supreme Court in *State v. Washington*, 491 So. 2d 1337 (La. 1986), a reviewing court must reverse a conviction if the defendant establishes that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and counsel's inadequate performance prejudiced the defendant to the extent that the trial was rendered unfair and the verdict suspect. *State v. Ball*, 19-01674 (La. 11/24/20), 305 So. 3d 90; *State v. Bayles*, *supra*.

Claims of ineffective assistance of counsel are more properly raised in an application for post-conviction relief in the trial court because this provides the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. *State v. McGee*, 18-1052 (La. 2/25/19), 264 So. 3d 445; *State v. Ward*, 53,969, (La. App. 2 Cir. 6/30/21), 324 So. 3d 231. When the record

8

is sufficient, however, allegations of ineffective assistance of trial counsel may be resolved on direct appeal in the interest of judicial economy. *Id.*

To support his claim that his trial counsel was ineffective, Mangham first claims that his counsel failed to request a downward departure from the statutory minimum sentence and that a downward departure is warranted due to his age and health. A defendant may attempt to rebut the presumption that a mandatory minimum sentence is constitutional, but he must "clearly and convincingly show that he is exceptional which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." *State v. Johnson*, 97-1906 (La. 3/4/98), 709 So. 2d 672, 676, citing *State v. Young*, 94-1636, pp. 5-6 (La. App. 4 Cir. 10/26/95), 663 So. 2d 525, 528 (Plotkin, J., concurring), *writ denied*, 95-3010 (La. 3/22/96), 669 So. 2d 1223; *State v. Parker*, 54,947 (La. App. 2 Cir. 3/1/23), 358 So. 3d 220, *writ denied*, 23-00417 (La. 10/3/23), 370 So. 3d 1073; *State v. Combs*, 56,232 (La. App. 2 Cir. 4/9/25), 410 So. 3d 405.

Next, Mangham argues that his counsel was ineffective by failing to file a motion to reconsider sentence. However, the mere failure to file a motion to reconsider is not, in and of itself, error. A basis for ineffective assistance of counsel may be found only if a defendant can show a reasonable probability that, but for counsel's error, his sentence would have been different. *State v. Jackson*, 52,606 (La. App. 2 Cir. 4/10/19), 268 So. 3d 1217, *writ denied*, 19-00699 (La. 10/15/19), 280 So. 3d 560, and *writ denied*, 19-00797 (La. 1/28/20), 291 So. 3d 1056.

9

Mangham must establish that his trial counsel's performance was deficient, and this deficiency prejudiced his defense. Mangham claims that his counsel's failure to request a downward departure from the minimum sentence was deficient and precluded the trial court from considering Mangham's age and health, as well as the legislature's failure to assign sentences which contemplate that some elderly people experience dramatic changes in behavior and are thus less culpable than they would be otherwise. Mangham claims that this preclusion resulted in prejudice to him, which continued as his counsel failed to preserve the issues of excessiveness for appeal by not filing a motion to reconsider Mangham's sentences. We disagree.

Mangham's argument is full of sound and fury, signifying nothing as it relates to his claims of ineffective assistance of counsel. Despite Mangham's claims, nothing in the record supports a finding that trial counsel's performance was deficient. Following the jury's verdict, Mangham's attorney filed motions for new trial and post-verdict judgment of acquittal, arguing on behalf of his client that the evidence presented at trial failed to prove beyond a reasonable doubt that Mangham committed the alleged crimes. The trial court at the sentencing hearing even acknowledged counsel's performance by stating that Mangham was represented by an "abled and capable" attorney.

Likewise, the trial court clearly considered Mangham's age during sentencing. The court noted that Mangham was a 73-year-old first felony offender with no prior criminal record. The court said that it found the evidence to be overwhelming in this case, and opined that the legislature deemed the crimes to be heinous and egregious offenses due to the penalties

associated with each crime. The trial court ultimately ordered the minimum sentences (25 years) for counts one and two and ordered that the sentences be served concurrently. The trial court's decision to order concurrent minimum sentences for both counts indicates that it considered the totality of Mangham's circumstances, including his age. Nothing supports Mangham's contention that a request for a downward departure from the statutory minimum would have changed Mangham's sentence. Furthermore, Mangham's claims that the legislature failed to contemplate elderly people's changes in behavior and culpability is unsupported.

Lastly, Mangham is unable to show a reasonable probability that his sentence would have been different if his trial counsel had filed a motion to reconsider sentence. Given the trial court's detailed reasoning at the sentencing hearing, it is highly unlikely that Mangham's sentence would have been different, especially considering he was already ordered to serve the minimum sentences for counts one and two, and each sentence was ordered to run concurrently. Ultimately, Mangham has failed to meet the *Strickland* standard as he could not establish that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and that his attorney's inadequate performance prejudiced the defendant to the extent that the trial was rendered unfair and the verdict suspect. For these reasons, Mangham's first assignment of error is without merit.

### *Excessive Sentence*

In his second assignment of error, Mangham asserts that his sentences are excessive under the circumstances as they amount to a virtual life sentence considering his advanced age and health. Alternatively, he urges

that, if this Court determines its review of Mangham's excessive sentence claim is limited to a bare claim of constitutional excessiveness, this Court should set his sentences aside and remand this case for resentencing as the sentences are grossly disproportionate to the severity of the offenses and shocking to the sense of justice due to Mangham's age and health and the fact that he is a first felony offender.

On the other hand, the State asserts that Mangham's sentences for his three offenses involving a juvenile under the age 13 are not excessive under the circumstances. Although Mangham argues that his 30-year sentence is a "virtual" life sentence, the State maintains that any defendant charged with these offenses faces the possibility of a "virtual" life sentence given that the maximum sentence is 99 years. The State urges that the legislature clearly contemplated the possibility of "virtual" life sentences in drafting the sentencing provisions.

Because we have determined that the failure to file a motion to reconsider sentence was not considered ineffective assistance on behalf of Mangham's trial counsel, our review is limited to the bare claim of constitutional excessiveness. *State v. Mims*, 619 So. 2d 1059 (La. 1993); *State v. Passaniti*, 49,075 (La. App. 2 Cir. 6/27/14), 144 So. 3d 1220, *writ denied*, 14-1612 (La. 3/6/15), 161 So. 3d 14; *State v. Smith*, 46,343 (La. App. 2 Cir. 6/22/11), 71 So. 3d 485, *writ denied*, 11-1646 (La. 1/13/12), 77 So. 3d 950. Under constitutional review, a sentence can be excessive, even when it falls within statutory guidelines, if the punishment is so grossly disproportionate to the severity of the crime that it shocks the sense of justice and serves no purpose other than to inflict pain and suffering. *State v. Anderson*, 55,550 (La. App. 2 Cir. 4/10/24), 383 So. 3d 1081, *writ denied*,

12

24-00779 (La. 10/23/24), 395 So. 3d 249, *cert. denied*, 145 S. Ct. 1473, 221 L. Ed. 2d 586 (2025); *State v. Smith*, 01-2574 (La. 1/14/03), 839 So. 2d 1.

The relevant provisions are:

- Whoever commits the crime of sexual battery on a victim under the age of thirteen years when the offender is seventeen years of age or older shall be punished by imprisonment at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence. La. R.S. 14:43.1(C)(2).

- Whoever commits the crime of molestation of a juvenile when the victim is under the age of thirteen years shall be imprisoned at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of probation, parole, or suspension of sentence. La. R.S. 14:81.2(D)(1).

- Whoever commits the crime of indecent behavior with juveniles on a victim under the age of thirteen when the offender is seventeen years of age or older, shall be punished by imprisonment at hard labor for not less than two nor more than twenty-five years. At least two years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence. La. R.S. 14:81(H)(2).

At the sentencing hearing, the trial court ordered a 25-year sentence at hard labor without benefit of probation, parole, or suspension of sentence for the conviction of sexual battery on a victim under the age of thirteen years old. For the conviction of molestation of a juvenile, the court stated that Mangham would be imprisoned for 25 years at hard labor without the benefit of probation, parole, or suspension of sentence. The court then stated that these sentences were to be served "concurrently with the exception of five years of that sentence." The court then ordered a ten-year sentence at hard labor without probation, parole, or suspension of sentence for Mangham's indecent behavior with a juvenile, and the court stated that the

13

ten-year sentence would be served concurrently. The trial court concluded the order by stating, "You have a total of 30 years to serve without the benefit of probation, parole, or suspension of sentence."

While we acknowledge that the verbiage used by the trial court relating to the 25-year sentencing in count two is unclear, the trial court's statement that Mangham was to serve a total of 30 years at hard labor without the benefit of probation, parole, or suspension of sentence resolves any uncertainty about Mangham's sentence. We agree with the trial court's assessment that Mangham took away the young victim's innocence and inflicted emotional trauma on not only the victim in this case, but the other young girls who testified at trial. Considering the potential sentencing exposure as well as the facts and evidence presented at trial, Mangham's 30-year sentence is neither grossly disproportionate to the severity of his crimes nor shocking to our sense of justice. Consequently, Mangham's second assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, the convictions and sentences of the defendant, Selma Thomas Mangham, are affirmed.

**AFFIRMED**.