' MAX N. TOBIAS, JR., Judge.
hThe defendant, James K. Brundy, Jr. (“Brundy”), appeals his conviction for aggravated battery. In the consolidated writ application, the state seeks relief from the trial court’s sentencing of the defendant to imprisonment at hard labor for only five years as a third-felony habitual offender— a sentence below the statutory minimum sentence under the Habitual Offender Law. Finding one patent error requiring trial court action as to the trial court’s failure to vacate the original sentence before sentencing the defendant as a habitual offender; finding no merit to the defendant’s assignments of error; finding merit to the claim of error in the state’s writ application; and for the reasons that follow, Brandy’s conviction is affirmed, his five-year sentence as a third-felony habitual offender is vacated, and the case is-remanded, to the trial court to vacate the defendant’s original sentence and then sentence the defendant as a third-felony habitual offender to imprisonment at hard labor for not less than six years and eight months nor more than twenty years, without the benefit of probation or suspension of sentence, in accordance with the Habitual Offender Law. (See footnote 4, infra.)

..Jd-

Brundy was originally charged on 20 September 2013 by bill of information with one count of attempted second degree murder, a violation of La. R.S. 14:30.1. He entered a plea of not guilty at his original 9 October 2013 arraignment. On 24 June 2014, the state amended the bill of information to charge Brundy with aggravated battery, a violation of La. R.S. 14:34.[1]
A trial by judge commenced on 24 June 2014, but was stayed pending disposition of a writ application filed by the state.[2] Trial recommenced on 19 September 2014. Brundy was found guilty as charged on that date. The trial court sentenced the defendant to seven years at hard labor on 10 October 2014. Brundy filed motions for new trial and for reconsideration of his sentence on 7 November 2014. On 18 August 2015, following an 8 May 2015 hearing, the trial court adjudicated the defendant to be a third-felony habitual offender, on which date it also denied his motion for new trial. On 11 September 2015, the trial court granted Brandy’s motion for a downward departure from the minimum sentence for a third-felony habitual offender and sentenced him to five *1252 years at hard labor. The state objected to the sentence and noticed its intent to seek appellate review by a writ application. The trial court also granted the defendant’s motion for appeal that date.
_kH.
FACTS
Brandy was charged with and tried for the 5 August 2013 aggravated battery of his wife, Waldrica Nathan (“Ms. Nathan”).
Ms. Nathaii testified that she and Brandy had four children together. She said that they had one prior incident of domestic violence, referring to a June 2010 incident. She confirmed that she had called the police regarding that incident, the cause of which was infidelity. Ms. Nathan said in that earlier incident the defendant had cut her shirt off with what she would describe as a butcher knife. She also said he had stabbed her television screen with the knife. She asserted she had not been injured in the incident. She testified that the defendant had made threats to her during that prior incident, but she did not remember him threatening to kill her or attempting to strangle her.
When asked about the matter giving rise to the. charge in the present case, Ms. Nathan testified that she and the defendant had been separated for a day or two after she had caught the defendant in a hotel room with a female (whom she later identified by name) on 4 August 2013. She said she was outraged. She initially had tried to hit Brandy, but she then calmed down and left. The following day, she was still very upset, so she called the police to report that the defendant had strangled her, hit her, and threatened to kill her. She recalled calling 911 twice. The police never came, so she went to the Fifth Police District station around 3:00 p.m. Once there, she told the police that Brandy had come up to her with a knife, Uforced her inside,, cut her with the knife, and strangled her with a hot hair curler cord.
Ms. Nathan confirmed that she showed the police her injuries from the fight, but testified that the injuries, just scratches she said, actually had been sustained in a “girl fight” she had the day before with the woman, L.C., with whom she had discovered the defendant. Ms. Nathan identified six photographs of those injuries. She claimed she had lied to the police about the alleged 5 August 2013 incident, telling them that the defendant had inflicted those injuries on her, threatened her, took money from her, and damaged the dashboard of her vehicle. She said defendant was not present when she fought with L.C., claiming that L.C. walked off as she (Ms. Nathan) was arguing with the defendant in the hotel room. Ms. Nathan said she later fought with the other woman on Chef Menteur Highway
Ms. Nathan confirmed on cross examination that when contacted by an attorney representing the defendant, she told him she did not wish to prosecute the case because the statements she had given to the police were false. She confirmed that defense counsel informed her that the state could force her to testify. She acknowledged that she had known the other woman before the day in question, and that the other woman had been involved in the murder of one of her (Ms. Nathan’s) cousins. She said she had been so upset when she caught Brandy -with L.C. that she had lied to the police to get his attention. She denied that the defendant had come to her/their home on 5 August 2013 or that he had cut her with a knife, strangled her with a curling iron cord, threatened to kill her, took any money from her, or damaged the dashboard of her car.
Ms. Nathan testified on redirect examination that she had argued with the defendant about L.C. on the night of 4 August *1253 2013, telling him “who she was.” |fiMs. Nathan explained that she had waited until the next day to make a report to the police because Brandy was still with the other woman and she (Ms. Nathan) was still upset. Defense counsel stipulated to the authenticity of two exhibits as a recording of the 911 call from 21 June 2010 and an incident recall from the same incident, both under NOPD item # F-30288, and two other exhibits as a recording of the 911 call from 5 August 2013 (the present case) and an incident recall from the same incident, both under NOPD item # H-55765.
New Orleans Police Officer (“NOPD”) Terrell Seiber testified that he interviewed Ms. Nathan at the NOPD Fifth District Police Station on 5 August 2013. She complained, that she was the victim of a domestic violence incident with her ex-husband. The officer stated that Ms. Nathan advised him that at about 8:00 a.m. that morning the defendant came to her residence, followed her inside; and began questioning her about where she had been sleeping. The officer said Ms. Nathan further advised him that .the defendant became agitated, at which time they got into a physical altercation and she was forced into the living room. Brandy retrieved a small-blade knife from the kitchen area, returned, and began to slash at Ms. Nathan’s arms and her shoulder area. The officer testified that Ms. Nathan related that she tried to take the knife from the defendant, at which time they struggled. Brandy placed the knife to her neck and he forced her into the bedroom. He began to choke her with his hands. She continued to struggle in an attempt to' break free, at which time the defendant wrapped the cord of a curling iron around her neck and began to strangle her. She said she lost consciousness temporarily and woke up on the floor of the bedroom. At that time she observed Brandy removing some currency from her purse, after which he left the residence.
| (¡Officer Seiber furthfer testified that his supervisor photographed Ms. Nathan’s injuries; he identified those photos. Officer Seiber identified an arrest warrant charging Brandy with attempted' murder by strangulation, domestic violence, and theft of $600. The arrest warrant was later introduced into evidence.
Officer Seiber testified on cross examination that his partner at the time, Officer Tianay Marshall, took Ms. Nathan’s complaint. Neither he nor Officer Marshall made any effort to go to Ms. Nathan’s residence to recover the two objects/weapons allegedly used in the attack — the knife and/or the curling iron. In fact, they did not go to the scene at all. He confirmed that after he took the initial report the case was given to a detective who was supposed to perform a follow-up, but he did not know whether any follow-up had been done. After refreshing his memory with his initial police report, Officer Seiber confirmed that on the date he spoke to Ms. Nathan her voice sounded hoarse. He stated that he came into contact with Ms. Nathan at around 2:45 p.m., and this was after she had made a 911 call. Defense counsel noted that the 911 recording(s) did not reflect that Ms. Nathan’s voice had been hoarse at the time she made them. The officer said they offered Ms. Nathan medical assistance, but she refused. She was not bleeding at the time, but he maintained that from what he observed, it appeared she had cuts to her arm. He did not interview the parties’ children, whom he said were in the bedroom at the time. He spoke to no one besides Ms. Nathan, who asserted that the defendant was at Ms. Nathan’s home on the day of the alleged battery.
NOPD Officer Tianay Marshall, who also spoke to Ms. Nathan on the afternoon *1254 of. 5 August 2013, .testified similarly to Officer Seiber regarding Ms. Nathan’s story of Brandy’s slashing Ms. Nathan’s arm with a knife, strangling her first with his hands and then with the cord from the curling iron, and as to Ms. |7Nathan losing consciousness. Officer Marshall never went to Ms. Nathan’s residence. Officer Marshall also’ Said she believed that a detective was supposed to follow up on Ms. Nathan’s complaint, but she replied in the negative when asked whether that detective was successful.
III.
' ERRORS PATENT—WRIT APPLICATION NO.
2015-K-1233
A review of the pleadings and proceedings reveals three patent errors and two potential patent errors.
First, the trial court failed to stipulate that Brandy’s five-year sentence was to be served without benefit of probation or suspension of sentence as required per La. R.S. 15:529.1 G, a subsection of the Habitual Offender Law that provides that that any'sentence imposed under that statute shall be without benefit of probation or suspension of 'sentence. Thus, the trial court’s failure to stipulate that the sentence was to be served without benefit of probation or suspension of sentence constitutes an illegally lenient sentence. State v. James, 07-1578, p. 6 (La.App. 4 Cir. 6/25/08), 988 So.2d 807, 811. However, La. R.S. 15:301.1 A self-activates a correction of such an illegally lenient sentence, providing that the sentence is deemed to contain the provisions relating to the service of the sentence without the benefit of parole, probation, and/or suspension of sentence, as the case may be. Id., 07-1578, pp. 6-7, 988 So.2d at 811.
Moreover, as discussed infra, we find that the defendant’s sentence must be vacated and the pa.se remanded for the imposition of the mandatory minimum sentence under the Habitual Offender Law. (See footnote 4, infra.) Thus, this error patent is rendered moot/
laSecond, the record does not reflect that the trial court ever vacated Brandy’s original sentence. • See La. R.S. 15:529.1 D(3) (“When the' judge finds that [the defendant] has been convicted of a prior felony or felonies . ’.. the court shall sentence him to the punishment prescribed in this Section, and shall vacate the previous sentence if already imposed, :..”). The trial court obviously intended to follow the statute and vacate the original sentence in connection with its sentencing Brandy as a habitual offender. • Generally, in such a case the proper procedure is for an appellate court to vacaté' the original sentence and remand the case for the district court to amend the minute entry and commitment to reflect that the original sentence has been Vacated. State v. Jackson, 00-0717 (La.App. 1 Cir. 2/16/01), 814 So.2d 6. However, in the present case, given that the defendant’s habitual offender sentence is to be vacated and the case remanded for resentencing, the trial court is instructed to vacate the original sentence at that time.
Third, the record does not reflect that the trial court ever ruled on Brandy's timely-filed motion to reconsider the original sentence. However, where, following the original sentencing the defendant is adjudicated a habitual offender and is sentenced as such, a case does not .have to be remanded for a ruling on the motion to reconsider before considering the merits of a defendant’s appeal of his conviction and/or sentence. State v. Cushenberry, 13-0382, pp. 14-15 (La.App. 4 Cir. 7/16/14), 146 So.3d 777, 786-87, writ den., 14-1765 (La.4/2/15), 163 So.3d 791.
*1255 As to the first patent error, the defendant filed a motion for new trial, and the record does not reflect that the trial court waited twenty-four hours after denying the motion for new trial before imposing the original sentence upon the defendant, as required by La. C.Cr.P. art. 873. However, Brundy was originally sentenced onlalO October 2014, and he did not file a motion for new trial until 7 November 2014.[3] Thus, at the time of sentencing no pending motion for new trial existed to trigger the statutory 24-hóur delay.
As to the second patent error, the trial court sentenced the defendant to less than the minimum sentence provided for a third-felony habitual offender convicted of aggravated battery. Such is the subject of the state’s consolidated writ application, number 2015-K-1233. We And the trial court erred in sentencing Brundy to less than the statutory mandatory minimum sentence as a third-felony habitual offender convicted of aggravated battery. ,
La. Const. Art. I, § 20 explicitly prohibits excessive sentences. Although a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment. State v. Every, 09-0721, p. 7 (La.App. 4 Cir. 3/24/10), 35 So.3d 410, 417. This rule applies equally to sentences— even mandatory ones — imposed under the Habitual Offender Law, La. R.S. 15:529.1. See State v. Dorthey, 623 So.2d 1276 (La.1993). However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. State v. Cassimere, 09-1075, p. 5 (La.App. 4 Cir. 3/17/10), 34 So.3d 954, 958. A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, or it is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Ambeau, 08—1191, p. 9 (La.App. 4 Cir. 2/11/09), 6 So.3d 215, 221. A sentence is grossly disproportionate if, when the crime and'punishment are considered in light of the harm done to society, it | mshocks the sense of justice. State v. Vargas-Alcerreca, 12-1070, p. 25 (La.App. 4 Cir. 10/2/13), Í26 So.3d 569, 583; State v. Galindo, 06-1090, pp. 15-16 (La.App. 4 Cir. 10/3/07), 968 So.2d 1102, 1113.
The purpose of the Louisiana Legislature’s enactment of the Habitual Offender Law was to deter and punish recidivism by subjecting defendants with multiple felony convictions to longer sentences for their instant crimes in light of their continuing disregard for the law. State v. Johnson, 97-1906, p. 8 (La.3/4/98), 709 So.2d 672, 677; State v. Hackett, 13-0178, p. 15 (La.App. 4 Cir. 8/21/13), 122 So.3d 1164, 1175.
In Johnson, the Supreme Court fully examined the issue of the constitutionality, in terms of excessiveness, of mandatory minimum sentences under the Habitual Offender Law. The court first made clear the general rule applicable to all sentences: even though a sentence under the Habitual. Offender Law is the minimum provided by that statute, the sentence may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. Johnson, 97-1906, pp. 6-7, 709 So.2d at 677.
*1256 The court in Johnson went on to state that to rebut the presumption that a mandatory minimum sentence under the Ha•bitual Offender Law is unconstitutional, a defendant must “clearly and convincingly show” that “he is exceptional,” “which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.” Id., 97-1906, p. 8, 709 So.2d at 677, quoting, in In part, a concurrence in a decision by this court in State v. Young, 94-1636 (La.App. 4 Cir. 10/26/95), 663 So.2d 525.
Brundy filed a motion for downward departure from the statutory minimum sentence for a third-felony habitual offender convicted of aggravated battery. At the 11 September 2015 habitual offender sentencing, the trial court stated that it was granting the motion and sentenced Brundy to five years at hard labor as a third-felony habitual offender. The trial court issued a written order granting the motion for downward departure, stating its reasons for judgment as follows:
[T]he victim in this case admitted under oath that she made a series of false statements to the police, which were the impetus for the defendant’s arrest and ultimate conviction. The State did not submit any other evidence that could have independently corroborated the victim’s testimony. In fact, there are [sic] exists [sic] strong circumstantial evidence porously flowing from the victim’s recantation testimony, which indicates that this crime may have never been committed. Sentencing the defendant within the mandatory sentencing scheme, under these circumstances, would make no measurable contribution to acceptable punishment and would furthermore constitute purposeless pain and suffering. As such, the defendant’s motion for a downward departure of sentence is GRANTED.
However, while the trial court’s reasons address the sufficiency of the evidence for Brandy’s conviction, they do not reflect that Brundy “clearly and convincingly” established that he was “exceptional,” or that the minimum sentence imposed on him was unconstitutionally excessive because it made “no measurable contribution to acceptable goals of punishment,” was “nothing more than the purposeless imposition of pain and suffering,” and/or was “grossly out of proportion to the severity of the crime.”
The Habitual Offender Law provides that if thé third-felony is such that upon a first conviction the offender would be punishable by imprisonment for any haterm less that his natural life, then the third-felony habitual offender shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction. La. R.S. 15:529.1 A(3)(a). Any sentence imposed under the Habitual Offender Law “shall be at hard labor without benefit of probation or ’suspension of sentence.” La. R.S. 15:529.1 G. Brundy was convicted of aggravated battery — the intentional use of force or violence with a “dangerous weapon” upon the person of another. La. R.S. 14:33; La. R.S. 14:34 A, La. R.S. 14:2(3). The penalty of imprisonment for aggravated battery under the circumstances of the present case'is imprisonment with or without hard labor for not more than ten years. La. R.S. 14:34 B.
Thus, the minimum sentence of imprisonment for Brundy.as a third-felony habitual offender was imprisonment at hard labor for six years and eight months (two-thirds of the longest sentence of imprisonment for aggravated battery), without ben *1257 efit of probation or suspension of sentence. La. R.S. 15:529.1 A(3)(a); La. R.S. 14:34 B; La. R.S. 15:529.1 G. The longest possible sentence of imprisonment in this case was twenty years. Id.
The defendant’s two prior felonies were a 2004 conviction for illegal possession of a stolen automobile and a 2008 conviction for possession of cocaine. Aggravated battery, the crime for which Brundy stands presently convicted, is a “crime of violence” under Louisiana law. La. R.S. 14:2 B(5).
In his motion for a downward departure Brundy simply attacked the sufficiency of the evidence. For example, he noted that there was “no blood recovered, no knife recovered, no curling , iron recovered, no vehicle photographs, ...,” and that “no corroboration that any incident ever took place” exists. 113However, we discuss infra in addressing the defendant’s Assignment of Error No. 1, the evidence was constitutionally sufficient to sustain Brandy’s conviction for aggravated battery.
In its reasons for granting the defendant’s motion for downward departure from the mandatory minimum sentence, the trial court also essentially questioned the sufficiency of the evidence — even though the court had tried the defendant and found him guilty as charged based on the same evidence it called into question in its reasons for granting the motion for downward departure.[4]
The trial court cited the Supreme Court’s 1993 decision in Dorthey and quoted language from it. However, in its 1998 decision in Johnson, where it further elaborated on the requirements for imposing a sentence under the Habitual Offender Law that is less than the mandatory minimum, the Court stated:
In State v. Dorthey, supra, this Court held that a trial court must reduce a defendant’s sentence to one not constitutionally excessive if the trial court finds that the sentence mandated by the Ha-, bitual Offender Law “makes no measurable contribution to acceptable goals of punishment”, or is nothing more than “the purposeful imposition of pain and suffering” and is “grossly out of proportion to the severity of the crime.” Id. at 1280-81. Finding a mandatory minimum sentence constitutionally excessive requires much more, though, than the mere utterance of the phrases above.
A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. See State v. Dorthey, supra at 1281 (Marcus, J., concurring); State v. Young, supra [94-1636 (La.App. 4 Cir. 10/26/95), 663 So.2d 525]. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the' particular case before it which would rebut this presumption of constitutionality.
| uJohnson, 97-1906, pp. 6-7, 709 So.2d at 676.
A difference of one year and eight months between the statutory mandatory minimum sentence and the five-year sentence imposed by the trial court is arguably minimal overall. However, such a downward departure is warranted under Johnson only where the defendant clearly and convincingly shows that he is “exceptional,” meaning that “because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpa *1258 bility of the offender, the gravity of the offense, and the circumstances of -the case.” Id,, 97-1906, p. 8, 709 So,2d. at 677.
The record in the present case does not support a finding that Brundy -“clearly and convincingly” showed that he “is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case,” particularly when the difference in the sentences is one year and eight months.
We reject the trial court’s conclusion that the statutory mandatory minimum sentence of imprisonment of six years and eight months at hard labor “makes no measurable contribution to acceptable goals of punishment,” “is nothing more than the purposeful imposition of pain and suffering,” and/or is “grossly out of proportion to the severity of the crime,” yet a sentence of imprisonment of five years at hard labor, which the trial court imposed, makes “a measurable contribution to acceptable goals of punishment,” is not “the purposeful imposition of pain and suffering,” and/or is not “grossly out of proportion to the severity of the crime.” The slight difference between the sentences renders this an inappropriate case for a sentencing ■ reduction pursuant to both Dorthey and \KJohnson, and it can safely be said that it is not the type of extraordinary case contemplated by either of those decisions.
Thus we find merit to the state’s writ application seeking relief from the trial court’s granting of Brandy’s motion for downward departure and the imposition of a sentence less than thp statutory minimum of six years and eight months at hard labor.
As to the state’s application for supervisory writ, we grant the writ application, vacate the five-year habitual offender sentence imposed, and remand this case to the trial court for the imposition of a sentence as required by La. R.S. 15:629.1 A(3)(a) for a third-felony habitual offender, which in this case means a sentence of not less than six years and eight months at hard labor and not more than twenty years at hard labor, any sentence being without the benefit of probation or suspension of sentence. (But see footnote 4, supra.)
IV.
ASSIGNMENT OF ERROR NOS. 1 AND 2
Brundy presents a single argument as to his related first two assignments of error that: (1) the trial court erred in denying his motion for acquittal and (2) the verdict is contrary to the law and the evidence.
Brandy was tried by the judge alone. La. C.Cr.P. art. 778 states:
In a trial by the judge alone the court shall enter a judgment of acquittal on one or more of the offenses charged, on its own motion or on that of defendant, after the close of the state’s evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.
If the court denies a defendant’s motion for a judgment of acquittal at the close of the state’s case, the defendant may offer its evidence in defense.
| mBrundy moved for a judgment of acquittal after the state rested its case, which the trial court denied. Brundy presented no evidence in his defense.
The dispositive issue as to the trial court’s denial of a, defendant’s motion for judgment of acquittal is whether the evidence was sufficient to support the conviction. In addition, the defendant’s claim that the guilty “verdict” is “contrary to the law and evidence” is directed to the sufficiency of the evidence.
*1259 When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court must first determine the sufficiency of the evidence. State v. Marcantel, 00-1629, p. 8 (La.4/3/02), 815-So.2d 50, 55, citing State v. Hearold, 603 So.2d 731, 734 (La.1992); State v. Burnley, 14-1077, p. 28, n. 5 (La.App. 4 Cir. 12/16/15), 183 So.3d 640, 660.
This court set forth the well-settled standard of review for sufficiency-'.of the evidence in the oft cited- case of State v. Watkins, 13-1248, pp; 13-14 (La.App. 4 Cir. 8/6/14), 146 So.3d 294, 303, as follows:
In evaluating whether evidence is. con-stitutipnally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991), However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretioii will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process" of law. Mus-sall; Green; supra. “[A] reviewing court is not called upon to decide whether it believes the witnesses dr whether the conviction is contrary to the 117weight of the evidence.” State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when- circumstantial evidence forms the basis of the conviction, such evidence must' consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such -that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445. So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
Watkins, 13-1248, pp. 13-14, 146 So.3d at 294, 303, quoting State v. Huckabay, 00-1082, p; 32 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, 1111.
The testimony of a single witness, if believed by the trier of fact, may be sufficient to support a conviction. Watkins, 13-1248, p. 14, 146 So.3d at 303, citing State v. Wells, 10-1338, p. 5 (La. 4 Cir. 3/30/11), 64 So.3d 303, 306. A factfin-der's decision concerning the credibility of a witness will not be disturbed unless it is clearly contrary to the evidence. Watkins, supra.
The due process standard of review under Jackson v. Virginia does not sanction the trier of fact’s speculation if the evidence is such that a reasonable factfinder must have a reasonable doubt. State v. Higgins, 03-1980, pp. 17-18 (La.4/1/05), 898 So.2d 1219, 1232; State v. Gordon, 13-0495, p. 18 (La.App. 4 Cir. 7/16/14), 146 So.3d 758, 770.
Brundy was convicted of aggravated battery, a violation of La. R.S. 14:34, de *1260 fined by that statute and La. R.S. 14:33 (defining battery) as the intentional use of force or violence upon the person of another with (by the use of) a dangerous weapon. La. R.S. 14:2(3) defines a “dangerous weapon” as including “any | ^instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm.”
The defendant’s sufficiency- argument rests primarily on the victim’s denials at trial that he cut her with a knife or strangled her with an electrical cord attached to a curling iron, as both NOPD' Officers Seiber and Marshall testified she had related to them on 5 August 2013. It is undisputed that photographs introduced in evidence depicted red marks and/or “cuts” on Ms. Nathan’s arms and a shoulder, and red marks on her neck. Ms. Nathan admitted she had told the two police officers that Brundy had inflicted the injuries on her. At trial, Ms. Nathan testified that on 4 August 2013, she caught the defendant in a hotel room with another woman, whom she knew. Ms. Nathan testified that she was outraged and attempted to strike the defendant, but she calmed down and left.' She said that the following day, she was still very upset, so she called the police to report that the defendant had strangled and hit her, and he had threatened to Mil her. She recalled calling 911 twice. The police never came, so she went to a police station around 3:00 p.m. Once there, she told the police that the defendant had come up to her with a knife, forced her inside, cut her with the knife, and strangled her with a “hot curler.”
Ms. Nathan then testified that the injuries had not been inflicted by the defendant, as she had told the police, but by the other woman. She said the injuries, which she described at trial as “just scratches,” had been sustained in a “girl fight” with the other woman on 4 August 2013. She claimed she had lied to the police on 5 August 2013. Officers' Seiber and Marshall both confirmed Ms. Nathan’s testimony that she had told them Brundy had cut her with a knife and strangled her. They both verified that Ms. Nathan had made a 911 call to police on | mB August 2013, prior to her presenting herself-at the Fifth District Police Station to make her complaint.
The defense stipulated to the authenticity of the exhibits as a recording of Ms. Nathan’s 911 call made on 5 August 2013 and an incident recall from the samé incident, both under NOPD item # H-55765.
Officers Seiber’s and Officer Marshall’s testimony about what Ms. Nathan had said to them (that Brundy “cut” her with a knife and strangled her . with the electrical cord of a curling iron) were not hearsay under La. C.E. art. 801 D(l)(c).[5] Such statements were admissible as substantive evidence of defendant’s guilt.
A statement of identification by a witness of a person after perceiving him-— as contemplated by La. C.E. art. 801 D(l)(c) — may be used assertively as substantive evidence of guilt, and it may be established through the testimony of the person to whom the statement was made, even if the witness denies making an identification or fails to make an in-court identification. State v. Stokes, 01-2564, p. 1 (La.9/20/02), 829 So.2d 1009, 1010, citing State v. Johnson, 99-3462, pp. 2-3 (La.11/3/00), 774 So.2d 79, 80-81; State v. *1261 Duncan, 11-0563, p. 18 (La.App. 4 Cir. 5/2/12), 91 So.3d 504, 516.
Viewing all the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the defendant 120used a cord from a curling iron to strangle Ms. Nathan,' and/or used a knife to inflict scratches or slight cuts to her arms, both the cord and the knife being dangerous weapons in the manner used.
We And no merit to Brandy’s Assignments of Error Nos. 1 and 2.
ASSIGNMENTS OF ERROR NOS. 3 AND 4
In related assignments of error, Brandy argues in his Assignment of Error No. 3 that the trial court erred in denying his motion for a new trial, and in his Assignment of Error No. 4 that the trial court erred in trying him without a jury where he did not waive his right to trial by jury in accordance with La. C.Cr.P. art. 780 B.
Brandy’s motion for new trial was filed on 7 November 2014, after he had been sentenced on 10 October 2014. Under the circumstances of the present case, his motion for new trial was required to have been filed prior to sentencing. La. C.Cr.P. art. 853 A (“Except as otherwise provided by this Article, a motion for new trial must be filed and disposed of before sentence,”) The article contains two exceptions to that general rule—when a motion for new trial is based on La. C.Cr.P. art. 851 B(3) (newly discovered evidence) or on La. - C.Cr.P. art. 851 B(6) (where the defendant is a victim of human trafficking). Accordingly, although the defendant untimely filed a motion for new trial after sentencing, and the trial court eventually denied it on 18 August 2015, the defendant can have no complaint of error as to that ruling because the motion was untimely filed.
In any case, Brandy’s motion for new trial was based solely on the alleged error by the trial court in conducting a judge trial without his valid waiver of his right to trial by jury as per La. C.Cr.P. art. 780 B, the merits of which'we now address. . ■
[21Both the Sixth Amendment to the United States Constitution and La. Const. Art. I, § 17(A) guarantee an accused the right to a trial by jury. Except in .capital cases, a defendant may knowingly and intelligently waive his right to trial by jury and elect to be tried by the judge. La. Const. Art. I, § 17; La. C.Cr.P. art. 780 A; La. C.Cr.P. art. 782 B. La. C.Cr.P. art. 780 states:
A. .A defendant charged with an offense other than one punishable by death may knowingly and intelligently waive a trial, by jury and elect to, be tried by the judge.
B. The defendant shall exercise his right to waive trial by jury in accordance with Article I, Section 17[6] of *1262 the Constitution of Louisiana. The waiver shall be by written motion filed in the district court not later than forty-five days prior to the date the case is set for trial. The motion shall be signed by the defendant and shall also be signed by defendant’s counsel unless the defendant has waived his right to counsel.
C. With the consent of the district attorney the defendant may waive trial by jury within forty-five days prior to the commencement of trial.
D. A waiver of trial by jury is irrevocable and cannot be withdrawn by the defendant. . [Emphasis supplied.]
Subsection B of article 780 became effective on 17 June 2013.
However, despite newly amended La. C.Cr.P. art. 780 B, this court has never held that a valid waiver of the right to trial by jury can only be accomplished laathrough the filing of a written motion signed by a defendant and his counsel (unless the defendant has not waived his right to counsel). ■
In State v. Toledano, 15-0552, unpub. (La.App. 4 Cir. 6/24/15), writ den., 15-1433 (La.5/27/16),; 192 So.3d 737, this court expressly held that “the failure to comply with the statutory requirement to make a written waiver of the right to a jury trial did not deprive defendant of any constitutional right,” as had been indicated by the trial court in that case.[7] In Toledano, this court found the oral waiver of the right to a jury trial was sufficient, i.e., made knowingly, intelligently, and freely, applying well-settled jurisprudence on the issue developed long before the 2013" amendment of La. C.Cr.P art. 780 B requiring that such waivers be in writing.
Brundy cites two writ decisions rendered by this court on the same day, both denying in identical language the state’s applications for supervisory review of trial court rulings permitting the respective defendants to revoke oral waivers of their rights to trial by jury:
The State seeks review of the district court’s ruling granting defendant’s motion to revoke his oral waiver of a jury trial. Pursuant to La. C.Cr.P. art. 780, the waiver of a jury trial shall be by written motion. The State’s writ is denied.
See State v. Lee, unpub., 15-0287, unpub. (La.App. 4 Cir. 3/19/15), writ den., 15-0552 (La.3/20/15), 160 So.3d 1293, and State v. Martin, 15-0288, unpub. (La.App. 4 Cir. 3/19/15), writ deni, 15-0551 (La.3/20/15), 160 So.3d 1292.
However, Martin and Lee are readily distinguishable from the present case and from Toledano, which was decided subsequent to Martin and Lee. Had | ^Brundy sought to withdraw his waiver of the right to trial by jury, Martin and Lee Would be authority for the proposition that he could have done so, given that his waiver was not in writing as required by amended La. C.Cr.P. art. 780 B. However, he did not seek to withdraw his waiver before proceeding to trial, and the.well-settled rules governing oral waivers of one’s right to trial by jury are applicable to him and this case.
“To be valid, a defendant’s waiver of his right to a jury trial must be knowing and intelligent.” State v. Bazile, 12-2243, p. 17 (La.5/7/13), 144 So.3d 719, 733. “[A] criminal defendant’s jury waiver is deemed knowing and intelligent when he understands ‘that the choice confronting *1263 him is, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge.’ ” Id. The waiver of the right to a trial by jury cannot be presumed. State v. Biddy, 13-0356, p. 20 (La.App. 4 Cir. 11/20/13), 129 So.3d 768, 780. The preferred practice for obtaining a valid waiver of the right to trial by jury is for the trial court to advise the defendant personally on the record of his right to trial by jury and require him to waive the right personally, either in writing or by oral statement in open court on the record. State v. Miorana, 14-0362, p. 3 (La.App. 4 Cir. 12/17/14), 156 So.3d 1214, 1216. The Supreme Court noted in State v. Piérre, 02-2665, p. 1 (La.3/28/03), 842 So.2d 321, 322, however, that “Although it remains the preferred method for the district court to advise a defendant of her right to trial by jury in open court before obtaining a waiver, such a practice is not statutorily required.” “Whether or not there is an intelligent, competent, self-protecting waiver of the right to trial by jury ^depends upon the unique circumstances of each case.” Bazile, 12-2243, p. 17, 144 So.3d at 733 (quoting Adams v. U.S. ex. rel. McCann, 317 U.S. 269, 278, 63 S.Ct. 236, 87 L.Ed. 268 (1942)).
. In the present case,- the docket .master and minute enfries from 9 October 2013 and 6 December 2013, respectively, reflect that Brundy was present with counsel at his arraignment; that the trial court informed him of his-right to a trial by judge or jury; and that the defendant was present with counsel when “[t]he defendant elected a judge trial.”
The record on appeal was supplemented with the brief transcript of the defendant’s 6 December 2013 waiver of his right to trial by jury and a request for a judge trial, in which defense counsel stated:
MS. HOLMES:
Kimya Holmes on behalf of James Brundy, who is present in court. I represent him only on the case set for motions, which is 517-563.
At this time, we are going to waive motions and also waive [sic] .jury, and ask for a trial date for the judge’s first available date.in January.[8]
In addition to this transcript, the trial judge in the present case gave reasons for denying the defendant’s untimely-filed motion for new trial, stating that the purpose of codifying the written waiver requirement was to ensure that a defendant’s waiver is knowingly, 'intelligently, and voluntarily made, which it found was evidenced from the record in the present case. The trial court stated that it would be an “absurd consequence” to read amended La. C.Cr.P. art. 780 B in | Msuch a way as to require it to grant a new trial based on a defendant’s failure “to reduce to writing what is-already known to the court_” Id.
In State v. Miorana, 14-0362 (La.App. 4 Cir. 12/17/14), 156 So.3d 1214, a minute entry reflected that the defendant’s counsel filed a “Waiver of Jury Trial and Request for Judge Trial.”' This court noted that there was no indication the defendant was informed of what the filing entailed and whether he had knowingly and intelligently opted out of a jury trial. No transcript of the' defendant “specifically acknowledging waiver of a jury trial” existed. *1264 ■Id., 13-0068, p. 3, 129 So.3d at 806. This court conceded that the record reflected that defense counsel filed the purported waiver in open court, in the defendant’s presence, and that the defendant did not object to the filing. However, this court rejected the state’s argument that this indicated that the defendant “acquiesced to a judge trial.” Id. This court held that “without a transcript to support the defendant’s knowing and intelligent waiver, we cannot find with certainty that he was made aware of and understood the waiver.” Id., 13-0068, p. 4, 129 So.3d at 807.
In State v. Spurlock, 15-1173 (La.9/25/15), 175 So.3d 955, the state sought supervisory and/or remedial writs of this court’s decision. The Supreme Court reversed this court, stating:
It is preferred but not statutorily required for the defendant to waive his right to a jury trial, personally. State v. Pierre, 2002-2665 (La.3/28/03), 842 So.2d 321. Defense counsel may waive the right on his client’s behalf, provided that the defendant’s decision to do so was made knowingly and intelligently. Id. The defendant’s jury waiver is deemed knowing and intelligent when he understands “that the choice confronting him is, on the one. hand,, to be judged by a group of people from. the community, and on the other hand, to have his guilt or innocence determined by a judge.” United States ex rel. Williams v. DeBobertis, 715 F.2d 1174, 1180 (7th Cir.1983), cert. denied, 464 U.S. 1072, 104 S.Ct. 982, 79 L.Ed.2d 219 (1984). The defendant’s prior criminal history may be [ 2ficonsidered in determining whether the defendant knowingly and intelligently waived his right to a jury trial. See State v. Phillips, 365 So.2d 1304, 1309 (La.1978).
Spurlock, 15-1173, p. 1, 175 So.3d at 955.
In reversing this court in Spurlock, the Court noted that the defendant was aware prior to the criminal charges in that case of his entitlements as they related to a choice to have his guilt or innocence determined by a judge or jury of his peers. Id., 15-1173, p. 1, 175 So.3d at 955-56. The Court also noted that the defendant had past criminal experience as an accused in the trial of a criminal prosecution where he was found guilty by a jury, citing a 1989 appellate court decision by this court involving the defendant. Id., 15-1173, pp. 1-2,175 So.3d at 956. The Court stated that the transcript of defense counsel’s testimony on the matter which, the Court noted, “was not found to lack credibility,” reflected that “defense counsel, after consulting with the defendant, waived the defendant’s right to a jury trial in open court in the presence of the defendant.” Id., 15-1173, p. 2, 175 So.3d at 956. Finally, the Court noted, “weeks later, the defendant proceeded to a bench trial without raising an objection to the absence of a jury.” Id.
All the factors, cited by the Supreme Court as present in Spurlock and favoring a finding that a valid waiver was present are in place in the instant case, but for (1) any statement by defense counsel that she waived the defendant’s right to trial by jury “after consulting” with him and (2) any indication the defendant had previously been tried by a jury. Brandy’s two prior felony convictions for which he was adjudicated a third-felony habitual offender resulted from guilty pleas. However, the documents evidencing the defendant’s two prior convictions do include respective waiver of rights forms for each plea, listing the right the defendant waived by initialing the appropriate space as his right to trial by judge orj^jury. A minute entry from the 2004 guilty plea reflects that the trial judge placed the defendant under oath, questioned him, and advised him of his rights and the consequences of his guilty plea, before the defendant waived his rights and pleaded guilty.
*1265 Moreover, we .find that the requirement of a written waiver of a jury trial now stated in article'780 B must be subject to a harmless error analysis on appeal of a conviction. The gravamen of the issue is the potential for the defendant and/or the defendant’s counsel to manipulate the system. Ultimately, the burden is upon the trial judge to be sure that the defendant files the written waiver of a jury trial as mandated by law. Failure of the trial judge to do so is error.
If such error was not subject to a harmless error analysis, the defendant and/or the defendant’s counsel could manipulate the system by never filing the written motion for a bench trial, having previously orally moved for same, then sitting back, and awaiting the trial judge’s decision on the guilt of the accused. If the decision after trial is unfavorable to the defendant, the defendant could then argue that the conviction is invalid because he never waived his right to trial by jury in writing. The defendant could further argue post-conviction that his counsel was ineffective because counsel never filed the formal written motion. The result would be a sandbagging of both the prosecution and the court.
One-upmanship has no place when dealing with a person’s constitutional right to a jury trial in the appropriate case.
The record reflects that Brundy understood that the choice confronting him was to either be judged by a group of people from the community, or to have his guilt or innocence determined by a judge, and that he knowingly, intelligently, and freely made the choice to have his guilt or innocence determined by a jury.
|28We find no merit to the claim that the record fails to reflect that Brundy knowingly, intelligently, and freely waived his right to trial by jury.
Thus no merit exists to this assignment of error.
y.
CONCLUSION
For the foregoing reasons, the writ application of the state is granted; Brundy!s conviction is affirmed; his five-year sentence as a third-felony habitual offender is vacated; and the case is remanded for the trial court to vacate the defendant’s original sentence and to sentence him as a third-felony habitual offender to imprisonment at hard labor without benefit of probation or suspension of sentence in accordance with the.Habitual Offender Law and the jurisprudence.
WRIT GRANTED; CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED WITH INSTRUCTIONS.
LANDRIEU, J., concurs with reasons.

, The victim, Ms. Nathan, was cálled as the state's first witness, whereupon she invoked her Fifth Amendment right against self-incrimination. The state immediately filed a motion to compel her to testify pursuant to La. C.Cr.P. art, 439.1, which motion was denied by the trial court. Trial was stayed pending this court’s ruling on the state's application for supervisory review, which this court granted on 17 September 2014. State v. Brundy, 14-0656, unpub. (La.App. 4 Cir. 9/17/14).

. The motion for new trial was untimely filed; by law it had to be both filed and disposed of prior to sentencing. La. C.Cr.P. art. 853 A.

. The trial court’s stated reasons for a downward departure from the statutory minimum sentence do not meet the standard. That is not to say that on resentencing the trial court could not state appropriate reasons for a downward departure from the statutory minimum sentence.

. La. C.E. art. 801 D(l)(c) provides, in pertinent part:
D. Statements which are not hearsay. A statement is not hearsay if:
(1) Prior statement by witness. The declar-ant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
[[Image here]]
(c) One of identification of a person made after perceiving the person; or....

. Article I, § 17 A of the Louisiana Constitution states:
A criminal case in which the punishm'ént may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. A case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall, be tried before a jury of six persons, all of whom must concur to fender a verdict. The accused shall have a right to full voir -dire examination of prospective jurors and to challenge jurors peremptorily. The number of challenges shall be fixed by law. Except in capital cases, a defendant may knowingly and intelligently waive his right to a trial by jury but no later than forty-five days prior to the trial date and the waiver shall be irrevocable.

. This court’s decision in Toledano was in the form of the granting of the, application for supervisory writ sought by the state.

. Ms. Holmes enrolled as counsel for the defendant within a week of his 9 October 2013 arraignment and continuously represented him through trial and his original sentencing. The reference by her to representing the. defendant "only on the case set for motions, which is 517-563,” was intended to distinguish the defendant’s present cáse from a separate case in which he was being prosecuted for á drug offense, and in which Ms. Holmes was not representing him. -