STATE OF LOUISIANA

VERSUS

JYREASE HAVIES

NO. 22-KA-133

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 19-7312, DIVISION "L"
HONORABLE DONALD A. ROWAN, JR., JUDGE PRESIDING


December 22, 2022


**STEPHEN J. WINDHORST**
**JUDGE**


Panel composed of Judges Stephen J. Windhorst,
Hans J. Liljeberg, and John J. Molaison, Jr.


**CONVICTIONS AFFIRMED;**
**SENTENCES ON COUNTS FOUR AND FIVE VACATED; REMANDED**
    **SJW**
    **HJL**
    **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

_Alexis Barteet_
Alexis Barteet
Assistant Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
      Honorable Paul D. Connick, Jr.
      Thomas J. Butler
      Andrea F. Long
      Jennifer C. Voss
      Joshua K. Vanderhooft

COUNSEL FOR DEFENDANT/APPELLANT,
JYREASE HAVIES
      Kevin V. Boshea

**WINDHORST, J.**

Defendant/appellant, Jyrease Havies, appeals his convictions and sentences for second degree murder, aggravated criminal damage to property, obstruction of justice, attempted simple escape, and solicitation to commit murder. For the following reasons, we affirm defendant's convictions, vacate his sentences on counts four and five, and remand for resentencing on these counts.

**PROCEDURAL BACKGROUND**

On December 12, 2019, a Jefferson Parish Grand Jury indicted defendant, Jyrease Havies, with the second degree murder of Christopher Wilson in violation of La. R.S. 14:30.1 (count one); aggravated criminal damage to property to 6136 Victorian Drive in violation of La. R.S. 14:55 (count two); obstruction of justice in violation of La. R.S. 14:130.1 (count three); simple escape in violation of La. R.S. 14:110 (count four); and solicitation to commit the second degree murder of Haylee Lester in violation of La. R.S. 14:28.1 (count five). Defendant was arraigned and pled not guilty on December 23, 2019.

On October 13, 2021, trial commenced before a twelve-person jury, and after a two-day trial, defendant was found guilty as charged on counts one, two, three, and five and guilty of attempted simple escape on count four. On December 6, 2021, the trial court sentenced defendant to life imprisonment without the benefit of parole, probation, or suspension of sentence on count one; imprisonment at hard labor for 15 years on count two; imprisonment at hard labor for 40 years on count three; imprisonment at hard labor for one year on count four; and imprisonment at hard labor for 20 years on count five. The trial court ordered defendant's sentences on counts one through four to run consecutively. According to the sentencing transcript, however, the trial court also ordered defendant's sentence on count four to run concurrently, and did not specify whether defendant's sentence as to count five was to run concurrently or consecutively with his other sentences.

On January 4, 2022, defendant filed a motion to reconsider his sentences and a motion for appeal. On that same date, the trial court granted the motion for appeal. A hearing on the motion to reconsider sentences was set for February 4, 2022. On January 6, 2022, defendant filed a motion for new trial, which was also set for hearing on February 4, 2022. After a hearing on February 4, 2022, the trial court denied defendant's motion to reconsider sentences and the motion for new trial.

Defendant now appeals his convictions and sentences, challenging the sufficiency of the evidence, the denial of his right to counsel of his choice, and the denial of his motion for new trial. Defendant also challenges the denial of his motion to reconsider his sentences and alleges that the consecutive maximum sentences are unconstitutionally excessive.

**THE EVIDENCE**

The following evidence was developed at trial involving the August 27, 2019 shooting and death of Christopher Wilson.

Ms. Haylee Lester, defendant's girlfriend at the time of the crime, testified regarding the events leading up to the shooting and discussed video surveillance footage and other exhibits the State introduced into evidence. On the day of the incident, while Ms. Lester was in class, defendant sent her a text message, which stated, "I'm going to hit a lick." She explained that this meant defendant wanted to rob someone. She did not know whom defendant was going to rob, and she did not know the victim, but she agreed to drive him. After she picked up defendant and Coby Harris, she drove to Victorian Drive where they waited for Mr. Wilson to arrive. Defendant sat in the front passenger seat, and Mr. Harris sat in the back passenger seat of the vehicle.

When Mr. Wilson arrived at the scene in a gray vehicle and stopped on the opposite side of the street, defendant exited the vehicle, and soon thereafter, she heard gunshots. At this point, Mr. Harris exited Ms. Lester's vehicle, and she drove

off because she was scared. She testified that she did not witness the shooting because after defendant exited her vehicle, she got on her phone. She confirmed that both defendant and Mr. Harris had guns, but that Mr. Harris told her his gun had jammed.

After leaving the crime scene, she went around the block, came back, and saw defendant running towards her car. Defendant and Mr. Harris got back in her vehicle, and they left the crime scene. Defendant, however, soon realized that he had left his cell phone in Mr. Wilson's car. They attempted to go back to the scene to find the phone but were unable. Ms. Lester testified that defendant used her phone that night after the shooting and that he logged into his iCloud account to erase his phone. During her testimony, she identified text messages that were sent by defendant from her phone after the shooting on August 27, 2019.

Because defendant was concerned that his sweatshirt had gunpowder residue on it, he gave the sweatshirt to Mr. Harris when they dropped him off after the shooting to dispose of it. Ms. Lester confirmed that defendant shot and killed Mr. Wilson, and testified that defendant admitted to her that he killed Mr. Wilson.

At trial, Ms. Lester acknowledged that after her arrest and during her interview, she told police detectives that defendant did not do it on purpose, that he did it in self-defense, and that he went to buy some "weed." At this interview, she said that "the dude" pulled his gun on defendant and that they did not know him. During her testimony at trial, she testified that she lied when she told the officers that defendant went to get weed because she wanted to protect defendant. Ms. Lester agreed that her story had changed from a drug deal and self-defense, to an armed robbery and a murder. She stated that she had nothing to lie about now. She explained that she was testifying because defendant killed somebody, and she realized he would not protect her. Ms. Lester also answered questions regarding her

plea agreement, in which she pled guilty to accessory after the fact to second degree murder and obstruction of justice.

Dr. Ellen Connor, a forensic pathologist with the Jefferson Parish Coroner's Office, was accepted as an expert in the field of forensic pathology. Dr. Connor performed an autopsy of Mr. Wilson, classified his death as a homicide, and determined that the victim's cause of death was four gunshot wounds.

Detective Brandon Cheron with the Jefferson Parish Sheriff's Office testified that on August 27, 2019, he was dispatched to the 6100 block of Victorian Drive regarding a black male who had possibly been shot inside a vehicle. Upon his arrival, Detective Cheron observed a gray vehicle in the front yard of a residence and found an unresponsive black male, later identified as Mr. Wilson, in the driver's seat. He checked for a pulse and signs of life but he did not observe any. He noticed a firearm underneath the driver's seat of the vehicle and bullet holes on the side of the car.

Lorenza McCollum testified that while living on Victorian Drive in August 2019, she went outside when she saw a red car parked in her driveway. Ms. McCollum later heard somebody screaming, came back outside, and learned that somebody was just killed. She denied seeing the shooting or being able to identify anyone. On the same day, an officer knocked on her door and told her that they believed a bullet went into her house. She testified that the bullet hole and accompanying bullet were found inside the wall of her den, where her grandson was present playing a game.

JPSO Detective Harold Wischan testified as the senior investigator for Mr. Wilson's homicide investigation. He explained that two locations were involved in this incident: one where the actual shooting occurred and another where the victim was located by responding deputies. He stated that photographs of the crime scene showed that the victim's vehicle crashed into a white Ford Expedition in the yard at

6124 Victorian Drive. During a search of the victim's vehicle, he found a yellow iPhone on the front passenger side, a semi-automatic pistol with an extended magazine on the front driver side, a red iPhone on the dashboard, the victim's ID, and a backpack, which contained a large Ziploc bag with 122 grams of marijuana, a couple of sandwich bags, and a plastic cup. He indicated that ballistic materials were found on the ground at 6137 and 6141 Victorian Drive, where the actual shooting occurred.

JPSO Detective Anthony Buttone testified that on August 27, 2019, he responded to the scene of Mr. Wilson's homicide. While there, he questioned witnesses, who said that they observed a black male, who was wearing a gray hooded sweatshirt. Following the shooting, the witnesses observed a female driver in a red car fleeing the area.[1]

During their investigation, detectives initially believed that Brianna Perrin was defendant's girlfriend. When the detectives interviewed Ms. Perrin, they learned that she was defendant's former girlfriend, and that he was dating another white female, Ms. Lester, who had a red sedan. Detective Buttone testified that they observed a "red Chevy car, four-door sedan" parked outside Ms. Lester's residence consistent with the description of the vehicle seen at the crime scene.

Once detectives learned that Ms. Lester was defendant's girlfriend, they conducted an interview with her. During Ms. Lester's interview, detectives located defendant inside Ms. Lester's residence at 412 Bluebonnet. They advised defendant of his Miranda rights and brought him to the investigation bureau. Detective Buttone provided that he obtained a DNA search warrant for a buccal swab from defendant and that the swab was sent to the crime lab.

---

[1] Detective Buttone explained that the video-surveillance footage corroborated the witnesses' statements about the red vehicle. He explained that there were twenty-four clips and that the date/time was "8-27-2019 16:58-56."

Detective Buttone also testified that while at the bureau, he removed defendant's handcuffs, asked defendant if he needed to use the bathroom, and defendant said that he did. As defendant walked out of the room, Detective Buttone turned his back to turn off the light. He explained that by the time he turned around, defendant was "running down the hallway."

At trial, Ms. Perrin testified that she and defendant once shared a phone, which he had taken back, and that defendant used a yellow XR phone. Ms. Perrin stated that she talked with defendant while he was in jail. She relayed that defendant asked her about Ms. Lester and wanted her to bond Ms. Lester out of jail. She explained that she did not know why he asked.

Dr. Marcela Zozaya, an expert in forensic DNA analysis and a forensic DNA analyst with JPSO, received items of evidence in this case to analyze and a DNA buccal swab from defendant. She determined that the DNA profile obtained from the yellow iPhone was consistent with the mixture of DNA from at least four individuals and that there were two major contributors and two minors. She found that defendant could not be excluded as a major contributor to the DNA mixture. Dr. Zozaya testified that the DNA profile from the major contributor to the firearm was greater than 631 million times more likely to be a mixture of DNA from defendant than a mixture of DNA from two unknown, unrelated individuals.

JPSO Sergeant Soloman Burke testified that he was the supervisor of the digital forensic unit and was accepted as an expert in the field of mobile device forensics. Sergeant Burke examined cell phones in connection with the instant case and generated a report regarding his findings. He was able to extract data from an iPhone associated with the number 504-***-3618. He confirmed that the Apple ID for the device was "Haylee.Lester1@gmail.com." He testified that this cell phone contained multiple text messages exchanged with the number 504-***-4104 on August 27, 2019. Sergeant Burke confirmed that they could not extract anything

from the yellow iPhone because someone had wiped it.[2]  He indicated that the registered owner of the 504-***-4104 number was "Jyrease Havies."

JPSO Detective Daniel Whamond, who was accepted as an expert in the field of mobile device forensics, testified that he extracted data from a red iPhone, and that the red iPhone contained text messages exchanged with defendant's number, 504-***-4104.  He explained that an attachment was sent from defendant's number to the red iPhone, which belonged to Mr. Wilson, of GPS coordinates that pin pointed the location of 6137 Victorian Drive.

Sergeant Jene Rauch of the Jefferson Parish Crime Laboratory, who was accepted as an expert in firearms, tool mark examination, and crime scene reconstruction, investigated the crime scene and performed a crime scene reconstruction.  She testified that a .40 caliber Glock pistol and five .40 caliber casings were found inside the vehicle found at the scene, and that the casings were "fired in" that Glock pistol.  She also determined that eight 9 mm casings found at the scene were fired from the same weapon.

Based on her ballistic analysis, Sergeant Rauch concluded that there was gunshot damage to the vehicle consistent with the front passenger door being open at the time of the shots.  She also concluded that other damage was consistent with "traveling from the passenger side of the vehicle towards the driver side."  She stated that projectiles traveled from the front driver side of the vehicle towards the passenger side as well.  She denied that any ballistics evidence recovered on the scene indicated that there was a third shooter.

The State also called as a witness Sergeant Thomas Gai from the JPSO Homicide Section who was the lead investigator assigned to Mr. Wilson's homicide.  Sergeant Gai testified that he obtained a search warrant and participated in its

---

[2]  Sgt. Burke explained that an Apple iPhone could be wiped from the device itself or remotely from an iCloud account on someone else's phone, a computer, or from a cell phone carrier.

execution on Ms. Lester's residence, and that they seized the backpacks belonging to defendant, which contained two extended "30-round glock 9 millimeter magazines, an ID, and a prescription." According to Sergeant Gai, the forensic analysis showed the yellow iPhone was wiped in this case. He testified about the text messages and phone calls exchanged between the victim's phone number 504-***-9913 and defendant's phone number 504-***-4014 in this case. He explained that the text messages discussed prices and types of narcotics for sale. Sergeant Gai stated that the text messages show they continued to talk about meeting up, and that defendant ultimately sent his location, which was in the 6100 block of Victorian Drive. He testified that the text messages were consistent with the time that the incident happened and the time the victim stated it would take to get there.

While the investigation was ongoing, Courtland Hardwick contacted Sergeant Gai, and said that defendant "actually confessed to a robbery and murder." Mr. Hardwick confirmed that he entered into a plea agreement where his charge was reduced to a lesser grade of theft in exchange for his testimony. He stated that he bunked with defendant at the jail, and knew him as "Little Jy" and from "the neighborhood." Mr. Hardwick indicated that defendant said he killed "that person," and that he went out to the location "to lick him, to rob him" because he was broke. He testified that defendant also told him how the shooting occurred, that his girlfriend was present the day of the incident, and that defendant said one of his friends had the murder weapon and took care of it.

Corielle Barnes, another ex-girlfriend of defendant, testified that on August 27, 2019, defendant confessed to her that he killed someone before he went to jail. She spoke with defendant while he was in jail on the phone, and some of the jail calls between her and defendant were played for the jury. She had multiple phone calls with defendant in which he indicated he wanted to have Ms. Lester killed. In one call, she explained that defendant wanted Ms. Lester bailed out because she was

"talking too much" in jail, and wanted her killed if she bonded out. She testified that they used code words while talking, and she noted that defendant's "candy" was his gun. In other calls, Ms. Barnes stated that someone named "Coby" was also on the call with them, and that they discussed defendant wanting Ms. Lester killed and discussed the gun. She said that she received a letter in the mail from defendant with a map to Ms. Lester's house but that she ripped the letter up. When defense counsel asked if defendant said, "Go kill Haylee?" Ms. Barnes responded, "He said it in so many words, so yes" and "You can see how he was talking, the slang he was saying, yes."

Defendant did not testify in this trial; however, he provided his statement, which was admitted into evidence. In his statement, defendant said that on August 27, 2019, around 10:00 or 11:00 A.M., he woke up with Ms. Lester, and she dropped him off in Woodmere. He told the detective that she drove a red Chevy. He stated that he hung out with his friends until 11:00 P.M. He said that he slept in Woodmere. Defendant stated that he heard about the incident on Victorian Drive through social media. He denied knowing the individual who was shot. The detective told defendant that the phone he gave Ms. Perrin was found in the victim's vehicle on Victorian Drive.[3] Defendant stated, "I don't know anything about that." He stated that he had "some gun" before the summer. He explained that he had two extended "mags" with 9 mm in them from his "partner" in Woodmere.

Defendant claimed Ms. Lester was lying, and he did not know why she told them that he was present at the shooting on Victorian Drive. In the video, Ms. Lester was brought into the interview room. Defendant again denied that he was with her, and he told her, "I was in Woodmere, huh?" Ms. Lester replied, "Yeah, I bring you

---

[3] Defendant explained that he previously lost his phone at the Walmart in Marrero. He stated that his phone number was 504-***-4144, his phone was an "x," and he provided the password. When the detective tells him that the phone number came up as 504-***-4014, defendant explained that was the number of the phone he gave Ms. Perrin.

in Woodmere." Defendant also stated to Ms. Lester, "I lost the phone in Walmart, huh?" Later, Ms. Lester came back in the interview room, and he told her, "Don't let them get in your f**king head." Defendant told her "to stop talking" repeatedly. He also said to her that "it was not too late" and to tell them that she was not with him. In the video, defendant told Ms. Lester, "don't say nothing." He also instructed her to tell them that she dropped him off in Woodmere at 10:00. Defendant told her "not to give up" and that they do not have enough evidence.

**LAW and ANALYSIS**

Defendant asserts the following assignments of error: (1) the verdicts of guilty are contrary to the law and the evidence; (2) he was denied his sixth amendment right to counsel; (3) the district court erred in the denial of the motion for new trial; (4) the imposition of consecutive sentences at hard labor without benefit of parole, probation or suspension or sentence is unconstitutionally excessive; and (5) the district court erred in the denial of the motion to reconsider sentence.

### *Sufficiency of the Evidence*

In his first assignment of error, defendant contends the evidence is insufficient to convict him of the second degree murder of Mr. Wilson, aggravated criminal damage to property, and/or solicitation for murder of Ms. Lester. He argues that the State failed to prove beyond a reasonable doubt his identity as the perpetrator of the offenses and that there was no ballistic evidence, no credible eyewitness testimony, no DNA evidence, and no cell phone evidence that excluded Mr. Harris. Defendant asserts that his convictions are based on unreliable evidence.

The constitutional standard for sufficiency of the evidence is whether, upon viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could find that the State proved all of the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under the Jackson standard, a review of a criminal conviction

record for sufficiency of evidence does not require the court to ask whether it believes that the evidence at trial established guilt beyond a reasonable doubt, but rather, whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in the light most favorable to the prosecution. State v. Flores, 10-651 (La. App. 5 Cir. 5/24/11), 66 So.3d 1118, 1122. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Miller, 20-182 (La. App. 5 Cir. 12/23/20), 308 So.3d 1246, 1256, writ denied, 21-233 (La. 4/27/21), 314 So.3d 838. On appeal, the credibility of the witnesses will not be reassessed. State v. Veillon, 19-606 (La. App. 5 Cir. 7/29/20), 297 So.3d 1091, 1099, writ denied, 20-1297 (La. 2/9/21), 310 So.3d 178.

In order to prove all the elements of an offense, the State must prove the identity of the defendant as the perpetrator. State v. Ray, 12-684 (La. App. 5 Cir. 04/10/13), 115 So.3d 17, 20, writ denied, 13-1115 (La. 10/25/13), 124 So.3d 1096. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. Id. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient to support a requisite factual finding. State v. Caffrey, 08-717 (La. App. 5 Cir. 05/12/09), 15 So.3d 198, 203, writ denied, 09-1305 (La. 02/05/10), 27 So.3d 297. A reviewing court may impinge on the factfinder's discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Garrison, 19-62 (La. App. 5 Cir. 4/23/20), 297 So.3d 190, 203–04, writ denied, 20-547 (La. 9/23/20), 301 So. 3d 1190, and cert. denied, 210 L. Ed. 2d 967, 141 S. Ct. 2864 (2021).

Defendant was convicted of second degree murder, aggravated criminal damage to property, obstruction of justice, attempted simple escape, and solicitation to commit second degree murder. On appeal, defendant only references his

convictions for second degree murder (count one), aggravated criminal damage to property (two), and solicitation to commit second degree murder (five). Defendant does not raise an issue relating to the sufficiency of evidence of the statutory elements of the offenses. Instead, defendant challenges whether the State proved his identity as the shooter, attacking the credibility of the witnesses and the DNA evidence. Upon review, the record indicates that a rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have found beyond a reasonable doubt that the evidence was sufficient to prove that defendant was the perpetrator of the murder.

Defendant asserts that the State failed to eliminate Mr. Harris as the killer and relies on Ms. Lester's testimony that she brought both defendant and Mr. Harris to the crime scene, that both were armed, and that both exited the vehicle.

Ms. Lester's testimony indicates that when Mr. Wilson arrived to meet defendant, defendant exited her vehicle and entered Mr. Wilson's vehicle, but that Mr. Harris did not exit her vehicle until after the shooting. In addition, the record indicates that defendant dropped his phone in Mr. Wilson's car, and that defendant had to discard his sweatshirt because it likely had gun residue on it. Defendant also admitted to Ms. Lester that he shot Mr. Wilson.

Ballistics evidence also supports defendant's conviction for the shooting. Based on her ballistic analysis, Sergeant Rauch explained that ballistics evidence recovered at the scene of the murder indicated that it involved two shooters, and the 9 mm casings, which were found outside the vehicle, matched casings recovered with defendant's belongings when he was arrested. She explained that a .40 caliber Glock pistol, which belonged to Mr. Wilson, and .40 caliber casings were located inside the vehicle. She denied that any ballistic evidence recovered on the scene indicated that there was a third shooter.

Furthermore, defendant's yellow iPhone was found on the passenger side of Mr. Wilson's vehicle. Dr. Zoyaza testified that defendant could not be excluded as a major contributor to the DNA mixture obtained from the yellow iPhone. Ms. Lester's testimony established that defendant erased his phone, the yellow iPhone, using her phone following the shooting.

Other evidence at trial that supports defendant's conviction for the shooting came from Mr. Hardwick and Ms. Barnes, who both testified that defendant told them he committed the shooting. Mr. Hardwick encountered defendant when he bunked with him in the Jefferson Parish Correctional Center. He stated that defendant told him that he killed "that person." Mr. Hardwick relayed that defendant explained that he went out to the location "to lick him, to rob him." Defendant also told him that the police were led to him by his phone and the car. He testified that defendant said he pulled his gun, "the guy bucked," and defendant shot him.

Finally, defendant challenges Ms. Lester's credibility because she admitted to lying in her first interview with detectives and had an interest in testifying against him to obtain reduced charges. The jury heard all the testimony in this matter, including information regarding Ms. Lester's first interview and her plea agreement, and made a credibility determination after listening to all of the testimony and evidence. It is not the province of this appellate court to reassess the factfinder's credibility determinations.

Considering the law, the testimony, and the evidence admitted at trial, we find that a rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have found beyond a reasonable doubt that the evidence was sufficient to support defendant's conviction for second degree murder and aggravated criminal damage to property.

Also, as to the solicitation for murder conviction, defendant only alleges "the offense was based on the selective interpretations and 'belief'" of Ms. Barnes. The

jury chose to believe her testimony that defendant asked her to have Ms. Lester killed and sent her a map of directions to Ms. Lester's house.  It is not the function of the appellate court to assess credibility or reweigh the evidence.  State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442, 443. The trier of fact shall evaluate credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness.  State v. Garrison, 297 So.3d at 204.

Accordingly, we find that a rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have found beyond a reasonable doubt that the evidence was sufficient to support defendant's conviction for solicitation to commit murder.

This assignment of error lacks merit.

### *Motion for New Trial*

The trial court sentenced defendant on December 6, 2021.  On January 4, 2022, defendant filed a motion to reconsider his sentences and a motion for appeal, the latter of which the trial court granted that day.  On January 6, 2022, defendant filed a motion for new trial pursuant to La. C.Cr.P. art. 851.  On February 4, 2022, the trial court considered the merits of the motion to reconsider sentences and the motion for new trial and denied both motions.

La. C.Cr.P. art. 853 mandates, in relevant part, that a "motion for a new trial must be filed and disposed of before sentence."  State v. Robinson, 14-453 (La. App. 5 Cir. 12/23/14), 167 So.3d 793, 799; State v. Williams, 09-82 (La. App. 5 Cir. 12/29/09), 30 So.3d 975, 976.  However, the article contains two exceptions to that general rule: when a motion for new trial is based on La. C.Cr.P. art. 851 B(3) (newly discovered evidence), or on La. C.Cr.P. art. 851 B(6) (where the defendant is a victim of human trafficking). *See* State v. Brundy, 16-263 (La. App. 4 Cir. 8/24/16), 198 So.3d 1247, writ denied, 16-1748 (La. 6/16/17), 220 So.3d 755.

Because defendant filed his motion for new trial on January 6, 2022, a month after his sentencing on December 6, 2021, the motion for new trial was untimely. In his written motion, defendant generally alleges that the trial court should grant him a new trial pursuant to La. C.Cr.P. art. 851. Defendant also argues that he was denied his right to counsel of his choice. Considering these arguments, defendant's motion for new trial was not based on an enumerated exception. We therefore find that defendant's motion was untimely in that it was not filed before his sentencing on December 6, 2021, and should have been denied on that basis.

Furthermore, pursuant to La. C.Cr.P. art. 916, a trial court is divested of jurisdiction upon the granting of a defendant's motion for appeal. State v. Lampkin, 12-391 (La. App. 5 Cir. 5/16/13), 119 So.3d 158, 162, writ denied, State ex rel. Lampkin v. State, 13-2303 (La. 5/23/14), 140 So.3d 717. Once the trial court is divested of jurisdiction, it may take only certain specified actions, none of which include ruling on a motion for a new trial. State v. Johnson, 13-75 (La. App. 5 Cir. 10/9/13), 128 So.3d 325, 327.

Prior to the filing of the untimely motion for new trial, defendant filed a motion for appeal on January 4, 2022. The court granted the motion on that same date. Accordingly, at the time of the February 4, 2022 hearing, the trial court lacked jurisdiction to rule on defendant's untimely motion for new trial.

This assignment of error lacks merit.

### *Right to Counsel of Choice*

Defendant argues that he was denied his right to counsel of choice because he hired Martin Regan to represent him but he did not represent him at trial. The State responds that defendant waived the issue by not objecting to his representation in a timely manner. Specifically, defendant first raised this issue in his motion for new trial, which was untimely. Nonetheless, the State asserts that this assignment of error has no merit in that Mr. Regan could not represent defendant at trial because he was

ineligible to practice law at the time; and that defendant had well-prepared and highly competent counsel at trial, Mr. Tony Angelette from the law firm of Regan Law, P.L.C. The State also argues that defendant did not terminate Mr. Angelette, inform the court of his desire to seek other counsel, move to continue the case, or object to proceeding to trial.

La. C.Cr.P. art. 841 provides that "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." To preserve the right to seek appellate review of an alleged trial court error, the party alleging the error must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection. State v. Lyons, 13-564 (La. App. 5 Cir. 1/31/14), 134 So. 3d 36, 40, writ denied sub nom. State ex rel. Lyons v. State, 2014-0481 (La. 11/7/14), 152 So. 3d 170. The purpose behind the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity so that he may cure the problem and to prevent the defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by an objection. State v. Styles, 96-897 (La. App. 5 Cir. 3/25/97), 692 So. 2d 1222, 1228, writ denied, 97-1069 (La. 10/13/97), 703 So. 2d 609.

When issues are first asserted in an untimely motion for new trial filed by appellate counsel, they are not timely urged, and the merits of the legal issues are not properly before an appellate court for review. State v. Williams, 370 So.2d 516, 518 (La. 1979).

In addition, the Louisiana Supreme Court has consistently held that the right to counsel of choice cannot be manipulated to obstruct the orderly procedure of the courts and cannot be used to interfere with the fair administration of justice. State v. Champion, 412 So.2d 1048, 1050 (La. 1982); State v. Johnson, 389 So.2d 1302, 1304 (La.1980); State v. Jones, 376 So.2d 125, 129 (La. 1979); State v. Lee, 364 So.2d 1024, 1028 (La. 1978). Defendant must exercise his right to counsel of his

choice at a reasonable time, in a reasonable manner, and at an appropriate stage of the proceedings.  State v. Seiss, 428 So.2d 444, 447 (La. 1983).

The record does not reflect that defendant asserted any issue with his defense counsel prior to trial, nor did he object to proceeding to trial with his counsel.  The record only shows that defendant first raised the issue of retained counsel in an untimely motion for new trial filed on January 6, 2022, after his trial and his sentencing.  Thus, we find that defendant did not make a timely objection to his counsel.

We therefore find that this assignment of error lacks merit.

***Error Patent in Sentencing***

We reviewed the record for errors patent pursuant to the mandates of La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d (La. 1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir. 1990), and for the following reasons, we find an error in the sentencing on counts four and five.

La. C.Cr.P. art. 879 requires the trial court to impose a determinate sentence. If a sentence is indeterminate in violation of La. C.Cr.P. art. 879, it should be remanded for the trial judge to clarify the sentence on resentencing.  State v. Lai, 04-1053 (La. App. 5 Cir. 4/26/05), 902 So.2d 550, 562, writ denied, 05-1681 (La. 2/3/06), 922 So.2d 1175.  Generally, where there is a discrepancy between the minutes and the transcript, the transcript prevails.  State v. Lynch, 441 So.2d 732, 734 (La. 1983).

When initially sentencing defendant, specifically with regard to whether his sentences would run consecutively or concurrently on counts four for attempted simple escape and count five for solicitation to commit second degree murder, the trial court mistakenly referred to count four twice.  The sentencing transcript indicates that the trial court sentenced defendant as follows:

The Court: On Count 1, for second degree murder, the Court shall sentence you to life, without the benefit of probation, parole, or suspension of sentence.

Count 2, the aggravated criminal damage to property, 15 years of hard labor in the Department of Corrections.

For Count 3, the obstruction of justice, it'll be 40 years at hard labor in the Department of Corrections.

For Count 4, the simple escape, give it one year of hard labor at the Department of Corrections

For Count 5, it'll be 20 years at hard labor in the Department of Corrections. **I want the record to reflect that Counts 1, 2, 3, and 4, will run consecutive to each other**, and **that on Count 4, I'll run that concurrent.** [Emphasis added.]

Based on the sentencing transcript, the trial court ordered defendant's sentence on count four to run *both* concurrently and consecutively with defendant's sentences as to counts one, two, and three, and did not specify whether defendant's sentence as to count five was to run concurrently or consecutively with his other sentences. As a result, we find that defendant's sentences on counts four and five are indeterminate.

We also point out that on count four, the defendant was sentenced to one year at hard labor for "simple escape," but defendant was convicted of *attempted* simple escape. While the sentence intended by the trial court was within the range prescribed by La. R.S. 14:110 B(4) and La. R.S. 14:27 D(3), the court must sentence defendant on the crime for which he was convicted, *i.e.*, attempted simple escape.

La. R.S. 14:27 D(3) further provides that the term of imprisonment shall be in the same manner as the crime attempted. In accordance with La. R.S. 14:110 B(4), the term of imprisonment on count four "shall not run concurrently with any other sentence." To the extent that the trial court intended that defendant's sentence on count four would run concurrently with defendant's sentences on his other counts, such sentence would not be in accordance with La. R.S. 14:110 B(4).

Considering the foregoing, we find that defendant's sentences on counts four and five are indeterminate. We must therefore vacate defendant's sentences on counts four and five and remand to the trial court for resentencing on these counts.

In assignments of error four and five, defendant asserts that the imposition of consecutive sentences at hard labor without the benefit of parole, probation, or suspension of sentence is unconstitutionally excessive and that the trial court erred in denying his motion to reconsider sentence. Because defendant's sentences on counts four and five are vacated herein, and this case is remanded for resentencing, we pretermit any discussion or review of defendant's assignments of error pertaining to his sentences.

With regard to the Uniform Sentencing Commitment Order, we point out that, under part "D. Sentence Conditions," neither "yes" or "no" is checked to determine whether the sentence in this case "shall be concurrent with any or every sentence the offender is now serving." The lines immediately below indicate that the sentence is concurrent with count four, and consecutive to counts one, two, three and five. This inconsistency is moot in that we vacate defendant's sentences on counts four and five in this opinion,[4] and consequently, a new uniform sentencing commitment order will be completed. Thus, no corrective action is necessary.

**DECREE**

For the foregoing reasons, we affirm defendant's convictions. We vacate defendant's sentences on counts four and five and remand for resentencing on these counts consistent with this opinion.

**CONVICTIONS AFFIRMED; SENTENCES ON COUNTS FOUR AND FIVE VACATED; REMANDED**

---

[4] It appears that these two lines are intended by the Dept. of Corrections to list sentences which a defendant is already serving in D.O.C. custody.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 22, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-KA-133

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DONALD A. ROWAN, JR. (DISTRICT JUDGE)
ANDREA F. LONG (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          KEVIN V. BOSHEA (APPELLANT)

**MAILED**
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
JENNIFER C. VOSS (APPELLEE)
DISTRICT ATTORNEY
JOSHUA K. VANDERHOOFT (APPELLEE)
ASSISTANT DISTRICT ATTORNEYS
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053